IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SYMBOL TECHNOLOGIES, INC.,

        Plaintiff,

v.

INTERMEC TECHNOLOGIES CORP.,

        Defendant.

Case No. 05-C-0256-C

**JURY TRIAL DEMANDED**

05 - 528

---

**DEFENDANT INTERMEC TECHNOLOGIES CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C., § 1404(A)**

---

### INTRODUCTION

This action is now the fourth lawsuit currently pending between plaintiff Symbol Technologies, Inc. ("Symbol") and defendant Intermec Technologies Corporation ("Intermec"). All three prior cases are pending in the District of Delaware. In one of those cases, Symbol has sued Intermec, claiming that the same products (bar code readers) accused of infringement in this case also infringe four other patents asserted there. *Symbol Technologies, Inc. v. Intermec Technology Corp.*, No. 05-146-SLR (D.Del. filed March 10, 2005) (hereinafter the "Symbol Delaware Action"). *See* Declaration of Arvin Danielson, ¶¶ 4-5 (copy attached to Intermec's § 1404(a) Motion as Exhibit A). *See also*, Complaint, ¶ 9 ("bar code readers"). Thus, transfer is warranted. 28 U.S.C., § 1404(a).

Symbol's choice to attack the same product group in two infringement actions raises many common issues of fact such as how Intermec's accused products function and whether sales of those products precluded any sales of Symbol products causing lost profits. These

common questions warrant transfer and consolidation. Moreover, because Symbol is not entitled to greater recovery if it proves that Intermec's products infringed multiple claims or multiple patents than it would be if it merely proves the infringement of a single claim, the failure to consolidate this action with the Symbol Delaware Action risks inconsistent damage determinations were Symbol to succeed in proving infringement in both cases.[1]

Critically, this case, the only one filed by either party outside of Delaware, has absolutely no connection with the Western District of Wisconsin. Symbol, a Delaware corporation, is based in Holtsville, New York. Complaint, ¶ 2. The two patents in suit list inventors who, at the time of patenting, resided in New York. No document or witness having knowledge pertaining to the validity or infringement of the asserted patents appears to be located in this district. *See* Danielson Declaration, ¶ 3.

Intermec is a Washington corporation based in Everett, Washington. Declaration of Robert Rainier, ¶ 3 (copy attached to Intermec's § 1404(a) Motion as Exhibit B). Intermec has no office in this district, has never sued or been sued in Wisconsin, has attended no trade shows here and does not advertise in Wisconsin based publications. Rainier Decl., ¶¶ 6-9. Intermec employs over 2,500 employees. *Id.*, ¶ 4. Only five Intermec employees reside in Wisconsin. *Id.*, ¶ 5. Only one of those resides in this district. *Id.* Virtually all of Intermec's documents relevant to its accused products and the witnesses having knowledge of those products reside outside of this district, principally in the Seattle, Washington area. *Id.*, ¶ Danielson Decl., ¶ 3.

Until recently, Intermec had an OEM purchasing agreement with Symbol under which Intermec purchased Symbol's laser scan engines for use in Intermec's bar code scanning

---

[1] Intermec, of course, denies that any of its products infringe any Symbol patent and asserts that it has a valid license from Symbol to build its products using the bar code scanning engines that Intermec purchased from Symbol. Until this defense is proven, of course, Intermec runs the risk of inconsistent results if it must defend largely the same set of accused products in two separate infringement actions. That risk warrants transfer and consolidation.

2

products. That agreement contained a covenant which, with certain stated exceptions, precluded patent infringement suits between the two companies. On June 7, 2004, Intermec sued Matrics, Inc.—then an independent competitor of Intermec—in the District of Delaware (cause No. 04-357-GMS) for infringing certain Intermec patents on Radio Frequency Identification or "RFID" technology. In August, 2004, Symbol agreed to acquire Matrics. Thereafter, Symbol claimed that the OEM Agreement's covenant mandated Intermec's dismissal of its patent infringement claim against the former Matrics products.

When Intermec refused to dismiss its infringement claims against the Matrics products, Symbol declared the OEM Agreement terminated and began aggressively suing Intermec. On March 10, 2005, Symbol filed civil action No. 05-146-SLR seeking a declaratory judgment that it had rightly terminated the OEM Agreement because of Intermec's alleged breach arising from its continuing infringement claims against the Matrics products.

On March 10, 2005, Symbol also filed the Symbol Delaware Action asserting four patents allegedly pertaining to Intermec's bar code reader products. At least one of those patents claims aspects of bar code reading technology as an element of the claimed invention. Intermec counterclaimed for patent infringement in that action, asserting six of its own patents against Symbol. At least one of Intermec's counterclaim patents also involves bar code readers.

Thus, transfer of this action for convenience to the District of Delaware under 1404(a) is warranted, for multiple reasons. First, no material connection to this district exists. Second, this action raises common questions of law and fact with the Symbol Delaware Action. Third, judicial economy warrants transfer of this action for consolidation with the related and earlier filed Symbol Delaware Action.

Alternatively, transfer of this action for convenience of the parties and witnesses to the District of Washington, where Intermec is headquartered, is also warranted.

## ARGUMENT

### I. TRANSFER OF THIS ACTION TO DELAWARE IS COMPELLED BOTH BY THE CONVENIENCE OF THE PARTIES AND BY JUDICIAL ECONOMY.

A motion to transfer venue is governed by 28 U.S.C., § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that this action might have been brought in the District of Delaware (where the other actions between these parties are already pending) or in the District of Washington (where Intermec is located). In deciding a motion to transfer venue for convenience, this Court must consider all of the relevant circumstances using the three statutory factors as placeholders. *Coffey v. Van Doren Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986) (three statutory factors: convenience of parties, convenience of witnesses and interests of justice). In this case, each of the factors warrants transfer of this action to the District of Delaware, or, at minimum, a transfer to the District of Washington.

First, no material events relevant to this case occurred in Wisconsin. The inventions claimed in the patents in suit were not created or developed here. The accused products were not designed and are not manufactured here. Danielson Decl., ¶¶ 6-7. These products are sold nationally. *Id.* No particular concentration of sales suggests that this District offers any advantage in access to relevant proof.

Where the forum chosen is not the site of material events, the plaintiff's choice is entitled to no special weight or deference. *United States v. Payne and Dolan, Inc.*, 2003 WL 23185881 at *3 (W.D.Wis.) (plaintiff's choice "will not receive deference" absent material events);

4

*Castleberg v. Covenant Healthcare, L.L.C.*, 2002 WL 32345613 at *2 (W.D.Wis.). In fact, the absence of material events occurring within this District weighs in favor of transfer. *Liberty Mutual Fire Inc. Co. v. The Nordic Group of Companies, Ltd.*, 2001 WL 34382016 at *7 (W.D.Wis.) ("Other than the fact that the original policy was issued and delivered in Wisconsin, no events, material or otherwise, took place in Wisconsin. This factor weighs in favor of transferring venue").

The geographic convenience of the parties and of the witnesses both favor transfer. Intermec is not aware of any potential witness who resides in this district or in the State of Wisconsin or any relevant documents which are located here. *See* Danielson Decl., ¶ 3. This case presents no question of Wisconsin law. Delaware is far closer to Symbol's New York headquarters, witnesses and documents than is Wisconsin.

Second, and more critically, litigating these infringement claims in Delaware is the only way to preserve the interests of justice. Symbol's tactic of attempting to gain leverage over Intermec by splitting its patent portfolio into multiple attacks on the same group of Intermec products filed in separate actions in different districts is wholly unfair and inappropriate. It is well recognized that "related litigation should be transferred to a forum where consolidation is feasible." *Coffey*, 796 F.2d at 221.

Consolidation is governed by Rule 42(a), F.R.Civ.P.[2] That rule only requires a common question of law or fact for cases to be consoldiated. "Common questions of law and fact do not have to predominate" for consolidation to be warranted. *Saudi Basic Industries Corp. v. Exxonmobile Corp.*, 194 F.Supp.2d 378, 416 (D. N.J. 2002) (*quoting* 8 MOORE'S FEDERAL

---

[2] Under Rule 42(a), of course, a prerequisite for consolidation is that the cases be pending in the same court. Thus, it is for the transferee court to decide whether consolidation is actually warranted. Intermec argues here only that consolidation is sufficiently feasible to warrant transfer for judicial economy under 28 U.S.C., § 1404(a). *See Coffey*, 796 F.2d at 221 (related actions should be transferred for consolidation).

5

PRACTICE, § 42.10 at 42-8). Actions "involving the same parties are apt candidates for consolidation." *Hanes Companies, Inc. v. Ronson*, 712 F,Supp. 1223, 1230 (M.D. N.C. 1988) (*quoting* C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2384, p. 263 (1971)). "Consolidation of tort actions sharing common questions of law and fact is commonplace." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).[3]

Courts have consolidated patent infringement cases involving different but related patents even when the defendants are different. *Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (D. Del. 1986). In *Cedars-Sinai*, the court ordered consolidation to avoid inconsistent results:

> Where a jury is the trier of fact on common issues of fact, it should be the *sole* determiner of those issues. Only consolidation, before a single jury, at least on the issues of validity, enforceability and infringement, would protect the plaintiff's constitutional rights ...

*Cedars-Sinai*, 111 F.R.D. at 32 (emphasis original). In this instance, consolidation is warranted both by the economy of deciding common issues only once and to avoid subjecting Intermec to the risk of inconsistent results. Because Intermec products accused in this Court are also accused in the Symbol Delaware Action, judicial economy is served by having only one determination of how those products—bar code readers—technically function.

The Delaware court is already well familiar with the basic technology claimed in the patents which are asserted by Symbol in the Symbol Delaware Action. Symbol just concluded an infringement claim under the same patents against another company. *Symbol Technologies, Inc. v. Proxim, Inc.*, 1:01-CV-00801-SLR. When Symbol filed the Symbol Delaware Action, it designated that case as "related" to the *Proxim* litigation, causing the infringement claim against Intermec to be assigned to the same judge.

---

[3] The infringement of a patent, of course, is a tortuous act.

6

Where the patents in two cases involve the same general technology, "consolidating the parties' dispute in front of one judge would reduce the need for duplicative time consuming tutorials...." *Broadcom Corp. v. Agere Systems, Inc.*, 2004 WL 1176168 at *1 (W.D.Wis.); *Broadcom Corp. v. Mictotune, Inc.*, 2004 WL 503942 at *4 (W.D.Wis.) (case transferred to a district "familiar with the general silicon-based tuner technology" at issue). Although there are a total of twelve patents asserted in the two cases (two by Symbol here; four by Symbol in its Delaware complaint and six by Intermec in its Delaware counterclaim) claiming many separate inventions involving several different technologies, there are sufficient technical similarities between this case and several of the patents in suit in Delaware to warrant transfer to avoid the necessity to educate two federal judges in basically the same technology.

The patents in this case address certain aspects of bar code reading and decoding technology. The Abstract of U.S. Patent No. 5,243,655 (asserted by Symbol in this case) states that the claimed invention relates to "[a] system for representing and recognizing data in machine readable graphic image form ...." The Abstract of U.S. Patent No. 5,457,308 (also asserted by Symbol in this case) states that it relates to "[a] method for combining decoded scan fragments" of a bar code to permit the code to be read from the fragments.

U.S. Patent No. 5,892,971 (asserted by Intermec in Delaware) claims a portable battery-powered hand-held data processing device incorporating "an indicia reader input system" in combination with other elements. Claim 1, '971 Patent. One "indicia reader" disclosed in the '971 Patent is a bar code reader. *See* '971 Patent, Col. 23, Lns. 29-35. Because of the "all elements" rule of patent cases, it will be necessary to determine whether Symbol's products involve "an indicia reader input system" of the type claimed by Intermec in the '971 Patent. *See RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003)

("there can be no infringement ... if even one limitation of a claim or its equivalent is not present"). Thus, Symbol may argue in Delaware that its bar code readers are sufficiently different from the "indicia reader input system" claimed in the '971 Patent to avoid infringement on that basis. If so, the workings of bar code readers will be relevant to resolving of the Symbol Delaware Action.

U.S. Patent No. 5,157,687 (asserted by Symbol against Intermec in Delaware) claims a combination including "a hand-held bar code reader" having:

> a light source for directing light toward a bar code symbol to be read and a light detector responsive to reflected light from a bar code symbol to generate an electrical signal containing bar code data

'687 Patent, Claim 1. Again, understanding any differences between the reader claimed in the '687 Patent and other methods of reading bar codes that may be incorporated in Intermec's bar code reader products may be an important issue in resolving claims made under the '687 Patent. Although the Symbol Delaware Action also involves other patents raising other technical issues, the technical similarities described above are uncontroverted.

More importantly, however, even were this Court to determine that the patents asserted here are so different from the patents asserted in the Symbol Delaware Action that the underlying technologies have nothing material in common, transfer for consolidation would still be warranted because of common damage questions and to avoid exposing Intermec to the risk of inconsistent damage decisions. Such common questions arise whenever the same products are accused of infringing multiple patents.

Regardless whether Intermec's bar code readers infringe one claim of any one of Symbol's patents or every claim of every Symbol patent, Symbol could only be entitled to one damage award. It is well-established that damages for patent infringement do not increase with the number of claims infringed. *Square Liner 360 Degrees, Inc. v. Chisum*, 1981 WL 48168,

215 U.S.P.Q. 1110, 1119 (D. Minn. 1981) (rejecting plaintiff's argument that special verdict omitting some claims warranted overturning damages verdict as insufficient: "Damages are not affected by the number of claims infringed. Plaintiff's rationale is contrary to law…").

The patent owner has the right to exclude an infringing product from the market. His damages for breach of that exclusion right are "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). Thus, where the patent owner has multiple rights to exclude the same product from the same market (*i.e.*, the accused product infringes more than one patent claim), the patent owner still has the right to only one recovery:

> To allow recovery of a royalty on Aro's sales after receipt of the equivalent of a royalty on Ford's sales, or to allow any recovery from Aro after receipt of full satisfaction from Ford, would not only disregard the statutory provision for recovery of 'damages' only, but would be at war with virtually every policy consideration in this area of the law.

*Aro*, 377 U.S. at 510 (only "nominal damages" available against contributory infringer because full recovery already received from the direct infringer).

Thus, where a single patent owner attacks a single defendant's product or group of products with different patents in different actions—as Symbol has done here—common questions of law and fact abound. If the damages are to be measured by lost profits, the patent owner must prove what sales of its own products were lost because of the sales of the infringing products. *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 653 (Fed.Cir. 1985) (patent owner must prove that he "would have made the sale of a product 'but for' the infringement"). "This rule calls for a reconstruction of the way the market would have developed in the absence of infringement." *Grain Processing Corp. v. American Maize Products Co.*, 979 F.Supp. 1233, 1236 (N.D. Ind. 1997). Thus, no matter how many Symbol patents or

claims an Intermec scanner product may have infringed, Symbol cannot recover more than the profit value of its own lost own lost sales. *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed.Cir. 1989) (accepting *Panduit* test for lost profits which includes "the amount of profit [the patentee] would have made.").

As the *Aro* Court demonstrated, the same limitation applies under a reasonable royalty analysis. 377 U.S. at 510 (no additional royalty from contributory infringer where full infringement recovery from direct infringer already received). "A reasonable royalty is generally an amount which a person desiring to manufacture and sell a patented article as a business proposition would be willing to pay as a royalty to the patent owner." *Armco, Inc. v. Republic Steel Corp.*, 707 F.2d 886, 891 (6th Cir. 1983). Where the patented article is protected by more than one patent, the value of a reasonable royalty on less than all of the patents required to legally make, use and sell that article is obviously zero "as a business proposition." No one would willingly pay any meaningful price for the license to one patent when licenses to additional patents are also necessary to legally manufacture and sell the (partially) licensed article. Where the accused product is covered by multiple patents, the only reasonable royalty greater than zero is one paid for the right to manufacture the article free and clear of all applicable patent claims.

Thus, common questions of law and fact concerning at least damages and the working of Intermec's accused products arise because Symbol has already accused the same products addressed in this action of infringing other patents in the earlier filed Symbol Delaware Action. "One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results." *International Paving Systems, Inc. v. Van-Tulco, Inc.*, 806 F.Supp. 17, 22 (E.D. N.Y. 1992). The only effective way to avoid conflicting results given the facts presented is

to grant the instant motion. *Cedars-Sinai*, 111 F.R.D. at 32 (single jury must determine common fact issues to avoid inconsistent results). These factors strongly suggest that transfer and consolidation are warranted.

Intermec recognizes that the presence of common issues, while a prerequisite to consolidation, does not automatically require consolidation. *Rohm & Haas Co., v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D. Del. 1981). The transferee court will also have to consider and balance any prejudice to Symbol which would result from consolidation with the Symbol Delaware Action. Intermec does suggest, however, that the presence of common issues is sufficient to warrant transfer. *See Coffey*, 796 F.2d at 221 (transfer is warranted if consolidation is shown to be "feasible"). Arguments about whether consolidation is in fact warranted under the balancing test are for the transferee court to decide.

Regardless, the possibility of prejudice to Symbol from a transfer and consolidation is obviously remote in this case. Symbol could have easily brought all infringement claims directed against the same Intermec products in a single action. Instead, it decided to forum shop. One reason for Symbol's conduct might be to gain leverage over Intermec by needlessly increasing its defense costs by multiplying pending actions. Because such a tactic is illegitimate, precluding its success cannot constitute undue prejudice to Symbol. *See* 28 U.S.C., § 1927.

Another reason might be Symbol's attempt to "end-run" the schedule of the Symbol Delaware Action by obtaining an infringement judgment from this Court (a relatively fast docket where Intermec has not yet filed any infringement counterclaims) before judgment in Delaware (where Intermec has filed infringement counterclaims and where the case may proceed more slowly because 10 patents are involved) can be rendered. Because this reason is also not a

11

legitimate concern, however, it also does not constitute the type of prejudice that would prevent consolidation upon transfer.

## CONCLUSION

For the above stated reasons, Intermec's Motion to Transfer Venue Pursuant to 28 U.S.C., § 1404(a) must be *GRANTED*.

DATED this $18$ day of May, 2005.

Respectfully submitted:

By: _____
Attorneys for Defendant
Intermec Technologies Corp.
WHYTE HIRSCHBOECK DUDEK S.C.

Eugenia G. Carter
State Bar No. 01011447
One East Main Street, Suite 300
Madison, WI 53703-3300
(608) 255-4440 (telephone)
(608) 258-7138 (facsimile)

FREEBORN & PETERS LLP
Leland W. Hutchinson, Jr.
Carson P. Veach
Jennifer L. Fitzgerald
Jeffrey M. Hansen
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606-6677
(312) 360-6503 (telephone)
(312) 360-6572 (facsimile)

109070