


**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

2005 MAY 27  PM 1:51

SYMBOL TECHNOLOGIES, INC.,                    0 5 -   5 2 8

        Plaintiff,

        v.                                    05-C-0256 C

INTERMEC TECHNOLOGIES CORP.,

        Defendant.

---

### SYMBOL TECHNOLOGIES, INC.'S OPPOSITION TO INTERMEC TECHNOLOGIES CORPORATION'S MOTION TO TRANSFER

---

Jeffrey S. Ward
Shane A. Bruner
Michael A. Hughes
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street
Suite 700
Madison, Wisconsin 53703

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022

*Attorneys for Plaintiff Symbol Technologies, Inc.*

WNY - 21107/0030 - 896193 v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...........................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT.................................................................................................................4

A.    Legal Standard For Transfer.............................................................................4

B.    Symbol's Choice Of Forum Is Entitled To Great Deference And Should
      Not Be Disturbed ..............................................................................................4

C.    Intermec Makes No Showing That Delaware Would Be More Convenient
      Than This District..............................................................................................6

      1.    Wisconsin Is More Convenient For Parties and Witnesses....................6

      2.    Documents Are Easily Accessible in Wisconsin....................................8

D.    The Interest of Justice Weighs Against Transfer................................................8

      1.    The Speed of This Court's Docket Will Ensure a Swift Resolution .......9

      2.    The Delaware Court Has No Familiarity with the Patents or
            Technology At Issue Here ...................................................................10

            a.    The Patents Are Wholly Unrelated...............................................10

            b.    The Technologies Differ...............................................................11

            c.    The Workings Of Bar-Code Readers Will Not Be An Issue
                  In Delaware.................................................................................14

      3.    Because This Action Would Not Be Consolidated With the
            Delaware Action, Transfer is Not Warranted .........................................16

      4.    Intermec Faces No Risk of Inconsistent Damage Decisions...................18

CONCLUSION...........................................................................................................19

NY - 21107/0030 - 894994 v15

## TABLE OF AUTHORITIES

**Cases**                                                         **Page**

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
   21 F.3d 1558 (Fed. Cir. 1994) ................................................................5

*Carnes Co. v. Stone Creek Mech., Inc.,*
   No. 02-C-0208-C, 2002 WL 32349391 (W.D. Wis. June 6, 2002)...........4

*Cedars-Sinai Med. Ctr. v. Revlon, Inc.,*
   111 F.R.D. 24 (D. Del. 1986) ...............................................................16

*Coffey v. Van Dorn Iron Works,*
   796 F.2d 217 (7th Cir. 1986) ........................................................4, 6, 8

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947)...............................................................................4

*In re Stone & Webster, Inc.,*
   CIV. 04-834-SLR, 2005 WL 1036556 (D. Del. May 3, 2005)................16

*John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc.,*
   No. 03-C-353-C (W.D. Wis. July 21, 2003)....................................5, 7, 9

*John Mezzalingua Assocs., Inc. v. Corning Gilbert, Inc.,*
   No. 03-C-354-S (W.D. Wis. July 22, 2003) ..................................6, 9, 16

*Leggett & Platt, Inc. v. Lozier, Inc.,*
   No. 04-C-0932-C (W.D. Wis. May 17, 2005) ......................................6, 9

*Micro-Acoustics Corp. v. Bose Corp.,*
   493 F. Supp. 356 (S.D.N.Y. 1980) .......................................................10

*Pall Corp. v. PTI Techs., Inc.,*
   992 F. Supp. 196 (E.D.N.Y. 1998) .......................................................10

*Parsons v. Chesapeake & Ohio Ry. Co.,*
   375 U.S. 71 (1963)................................................................................9

*Pfizer Inc. v. Perrigo Co.,*
   No. 95 CIV. 5072(DC), 1996 WL 233692 (S.D.N.Y. May 7, 1996) .......10

*Platt v. Minnesota Mining & Mfg. Co.,*
   376 U.S. 240 (1964)...............................................................................6

*Revcor, Inc. v. Lau Indus., Inc.,*
   No. 04-C-927-S (W.D. Wis. Feb. 11, 2004)...........................................8

NY - 21107/0030 - 895852 v3

*Rexall Sundown, Inc. v. Weidner Nutrition Int'l,Inc.,*
  No. 03-C-613-S, 03-C-620-S (W.D. Wis. Jan. 7, 2004)......................................6, 8, 9

*Roberts & Schaefer Co. v. Merit Contracting, Inc.,*
  99 F.3d 248 (7th Cir. 1996) .................................................................................4

*Safe Bed Techs. Co. v. KCI USA Inc.,*
  No. 02-C-97, 2002 WL 1769991 (N.D. Ill. July 30, 2002) ........................................6

*Square D Co. v. Medar Inc.,*
  No. CIV. A. 94-184-SLR, 1994 WL 859606 (D. Del. Aug. 31, 1994) ...................................15

*Square Liner 360 Degrees, Inc. v. Chisum,*
  No. 4-76-CIV. 134, 1981 WL 48168 (D. Minn. Nov. 2, 1981)...............................18

*Sitrick v. FreeHand Sys., Inc.,*
  No. 02-C-1568, 2003 WL 1581741 (N.D. Ill. Mar. 27, 2003) ....................................7

*Stickle v. Heublein, Inc.,*
  716 F.2d 1550 (Fed. Cir. 1983) ..............................................................................18

*Syngenta Seeds, Inc. v. Monsanto Co.,*
  No. C.A. 02-1331-SLR, 2004 WL 2002208 (D. Del. Aug. 27, 2004) ...................................17

*Sypert v. Miner,*
  266 F.2d 196 (7th Cir.), *cert. denied,* 361 U.S. 832 (1959)......................................7

*Sung v. Minnesota Mining & Mfg.. Co.,*
  No. 2:020-CV-191 (E.D. Tex. Nov. 15, 2002)..........................................................8

*Truth Hardware Corp. v. Ashland Prods., Inc.,*
  No. C.A. 02-1541 GMS, 2003 WL 118005 (D. Del. Jan. 13, 2003).........................16

*United States ex rel. Gervae v. Payne and Dolan, Inc.,*
  No. 01-C-0383-C, 2003 WL 23185881 (W.D. Wis. July 14, 2003) .........................5

*Wayne Pigment Corp. v. Halox,*
  220 F. Supp. 2d 931 (E.D. Wis. 2002) ...................................................................5

## <u>Other Authorities</u>

Federal Rule of Civil Procedure 42 .................................................................................................2

Federal Rule of Civil Procedure 42(a) ........................................................................................16

28 U.S.C. § 1404(a) ...................................................................................................................1, 4

35 U.S.C. § 284............................................................................................................................18

WNY - 21107/0030 - 895852 v3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

SYMBOL TECHNOLOGIES, INC.,

Plaintiff,

v.                                        05-C-0256 C

INTERMEC TECHNOLOGIES CORP.,

Defendant.

## SYMBOL TECHNOLOGIES, INC.'S OPPOSITION TO INTERMEC
## TECHNOLOGIES CORPORATION'S MOTION TO TRANSFER

Plaintiff Symbol Technologies, Inc. ("Symbol") submits this memorandum in opposition to the motion of Defendant Intermec Technologies Corporation ("Intermec") under 28 U.S.C. § 1404(a) to transfer this action to the District of Delaware ("Delaware"), or in the alternative, to the "District of Washington" ("Washington").[1]    For the reasons set forth below, Intermec's motion should be denied.

### PRELIMINARY STATEMENT

The touchstone of Section 1404(a) is "the convenience of the parties and the witnesses." Intermec does not even attempt to meet the standard plainly required by the statute and the case law.  The truth is that none of the parties, witnesses, evidence, or anything else of import to the

---

[1]    Intermec does not even bother to specify whether it moves to transfer to the Eastern or Western District of Washington.  (Defendant Intermec Technologies Corporation's Memorandum in Support of its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Intermec Br."), p. 4.)

WNY - 21107/0030 - 894994 v15

case is located in Delaware. Intermec, therefore, cannot overcome the deference afforded to plaintiff's choice of forum.

Intermec then purports to rely on Federal Rule of Civil Procedure 42 ("Rule 42"), which permits consolidation of cases in certain circumstances. However, Rule 42 is limited to consolidation of cases pending in the same court. This case is obviously not pending in the District of Delaware, hence Rule 42 is irrelevant.

Then, by use of broad generalities and citation to patently inapposite case law, Intermec seeks to persuade this Court that because both companies are parties to patent cases already pending in Delaware, some sort of efficiency or synergy would be achieved if this case were transferred there. Intermec thereby ignores that the patents at issue in this case have nothing whatsoever to do with the patents in the Delaware litigation; they are related to completely different technologies, by different inventors; and the proof will involve different fact witnesses and different technical experts, all of whom are spread throughout the United States, including on the West Coast.

Moreover, even if this case *were* transferred to Delaware, no efficiencies, judicial or otherwise, would be achieved. Because the patents and the accused technologies at issue in the two fora have nothing to do with each other, documents, depositions and other discovery in this case would not overlap with the existing cases. The claims of these wholly distinct patents, of course, would still have to be construed completely independently. The proof on infringement and validity of the patents in the two cases, likewise, would not intersect in any way. Indeed, Intermec could not credibly assert that this case is "related to" the pending patent cases in Delaware, so as to have it assigned to one of the two district judges handling the patent cases between Symbol and Intermec.

The best evidence of what Intermec really believes (when its goal was not to "get out of town," as it is on this motion) is its conduct in Delaware.  When Symbol sued Intermec in Delaware in March, Intermec did not try to have that case transferred to the judge handling the existing patent case in which Intermec is the plaintiff, and Symbol is the defendant, even though that case involved a patent allegedly infringed by Symbol products that contain bar-codes.

Intermec's attempt to garner sympathy from the Court by suggesting that keeping this case in Wisconsin somehow exposes Intermec to double payment of royalties is silly.  As Intermec well knows, a patent owner is entitled to at least a reasonable royalty for the unauthorized use of its patented invention.  Once that royalty is paid, the patent owner's right to collect is exhausted.  So, even if Symbol were somehow seeking to collect twice for the same infringement, the law prohibits it.

Symbol, of course, is not trying to get double damages.  It *is* seeking to protect its intellectual property rights.  An analogous situation would be if General Motors sued a competitor for infringement of a patent on an engine, while asserting a radio patent in a different lawsuit.  Obviously, both patents are related to features of automobiles; that does not mean it is improper to seek compensation for infringement of both patents separately.

In a throw away, Intermec suggests that this case might also get transferred to its home base in the State of Washington.  But Intermec does not even attempt to explain why transferring this action to Washington would be appropriate.  Its half-hearted argument for Washington State also fails.

At bottom, what Intermec is really telling this Court is that it would like to be anywhere but here.  But Intermec, like Symbol, is registered to do business in Wisconsin and has a place of business in this District.  Symbol readily concedes that it chose this District in large part to get

3

the benefit of the accelerated nature of the proceedings here. But that, we respectfully submit, is no basis to transfer the case to Delaware in the absence of any legal or factual basis to do so.

For these reasons and those that follow, Intermec's Motion to Transfer should be denied.

## ARGUMENT

**A.    Legal Standard For Transfer**

Intermec's motion to transfer is governed by 28 U.S.C. § 1404(a), which permits transfer "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The factors to be considered on a motion to transfer under Section 1404(a) are: (1) the plaintiff's choice of forum; (2) the convenience of the parties and witnesses; and (3) the interest of justice. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996). The burden is on Intermec, the moving party, to establish that the transfer is warranted. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). As set forth below, Intermec does not even come close to meeting that burden as to any of these factors.

**B.    Symbol's Choice Of Forum Is Entitled**
**To Great Deference And Should Not Be Disturbed**

In weighing the various factors under Section 1404(a), the Supreme Court has instructed that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Indeed, a plaintiff's choice of forum is entitled to great deference and "will not be disregarded without convincing reason." *Carnes Co. v. Stone Creek Mech., Inc.*, No. 02-C-0208-C, 2002 WL 32349391, at *8 (W.D. Wis. June 6, 2002).

Intermec argues mistakenly that Symbol's choice of forum "is entitled to no special weight or deference" because it is "not the site of material events." (Intermec Br., p. 4.)[2] The Federal Circuit dictates that "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed. Cir. 1994); *Wayne Pigment Corp. v. Halox,* 220 F. Supp. 2d 931, 932 (E.D. Wis. 2002). The situs of material events in patent cases, therefore, is the location of the infringing sales.

Significantly, Intermec, a national corporation which sells its products nationwide, including in Wisconsin, does not deny selling infringing products in this District. (*See* Intermec Br., p. 4, ("The [accused products] are sold nationally."); *see also* Intermec's Answer and Defenses to Complaint for Patent Infringment, ¶ 5, admitting that "it transacts business within the State of Wisconsin."). By selling its products in Wisconsin, Intermec competes with and diminishes Symbol's sales in Wisconsin. That alone makes this District appropriate for this action. *John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc.,* No. 03-C-353-C, slip op. at 3 (W.D. Wis. July 21, 2003) (Crabb, C.J.) ("By engaging in business in Wisconsin, defendant has subjected itself to be sued here.") (a copy of this decision is attached as Exhibit A hereto). Because Wisconsin is the site of material events, namely the sale of infringing products, Symbol's choice of forum should be preserved.

---

[2]    Intermec cites *United States ex rel. Gervae v. Payne and Doland, Inc.,* No. 01-C-0383-C, 2003 WL 23185881, at *3 (W.D. Wis. July 14, 2003), an action under the False Claims Act, in support of its argument. The court in *Payne* found that the plaintiff's choice of forum was "not subject to deference" because the plaintiff resided in the transferee forum and the situs of events occurred in the transferee forum. *Id.* Here, neither Delaware nor Washington is Symbol's home forum, and the infringing conduct at issue occurred throughout the United States, including in this District.

C.    **Intermec Makes No Showing That**
      **Delaware Would Be More Convenient Than This District**

Aside from plaintiff's choice of forum, factors to be considered by the Court in assessing the convenience aspect of a Section 1404(a) transfer include: (1) the location of the parties and witnesses, (2) the ease of access to sources of proof, and (3) the situs of material events. *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 244 (1964); *Leggett & Platt, Inc. v. Lozier, Inc.*, No. 04-C-0932-C, 2005 WL 1168360, at *1 (W.D. Wis. May 17, 2005). It is Intermec's burden to show by reference to specific facts and circumstances that the transferee forum is clearly more convenient. *Leggett*, 2005 WL 1168360, at *1, *citing Coffey*, 796 F.2d at 219-220; *Rexall Sundown, Inc. v. Weidner Nutrition Int'l, Inc.*, 03-C-613-S, slip op. at 3 (W.D. Wis. Jan. 7, 2004) (Exhibit B hereto).

1.    **Wisconsin Is More Convenient For Parties and Witnesses**

Intermec fails to address, much less sustain, its burden of showing that Delaware is more convenient for its witnesses. Intermec's vague assertion that "virtually all" of its witnesses are in Washington State (Intermec Br., p. 2.), is totally insufficient to meet Intermec's burden of showing that Delaware, on the opposite side of the country, is "clearly" more convenient. *See Leggett*, 2005 WL 1168360, at *2. Intermec has identified no material fact witness unwilling or unable to travel to Wisconsin for trial, but willing and able to travel the greater distance to Delaware. *Safe Bed Techs. Co. v. KCI USA Inc.*, No. 02-C-97, 2002 WL 1769991, at *4 (N.D. Ill. July 30, 2002) ("More importantly, KCI USA presents no evidence that a single one of its twenty-three potential witnesses would be unwilling to testify at trial in Illinois if asked. This fact militates against KCI USA's position."). Presumably, Intermec's witnesses are current or former employees who are closely aligned with it, and will travel to trial regardless of the location. *See John Mezzalingua Assocs., Inc. v. Corning Gilbert Inc.*, 03-C-354-S, slip op. at 4

(W.D. Wis. July 22, 2003) (finding that convenience of witnesses does not favor transfer where "there is little risk that any witness with important testimony will fail to appear since all are closely aligned with the parties") (Exhibit C hereto). Of course, Wisconsin would be more convenient for Intermec's Washington State-based witnesses, as it is geographically closer than Delaware.

Also of significance in patent infringement actions are the inventors of the patents. The inventor of the '655 Patent is, Symbol believes, located in California. (Declaration of Ira J. Schaefer in Opposition to Intermec Technologies Corporation's Motion to Transfer, dated May 26, 2005 ("Schaefer Decl."), ¶ 5.). One of the two inventors of the '308 Patent lives in New York and the other had been living there, although Symbol does not know if he still does. (*Id.*). None of them is in Delaware.

As in other patent infringement actions, the primary witnesses here likely will be experts. *See Mezzalingua v. Arris*, slip op. at 2 ("The most important witnesses [in patent infringement cases] are experts."). Experts can be found in any jurisdiction and are willing to travel to accommodate a client. Not surprisingly, Intermec does not contend that its experts are unwilling or unable to travel to Wisconsin, and there is no basis to believe they would be. *See Sypert v. Miner*, 266 F.2d 196, 199 (7th Cir. 1959) (no reason why experts cannot be found in transferee district). There is no reason to believe, therefore, that Delaware is a more convenient forum for both parties' expert witnesses. *See Mezzalingua v. Arris*, slip op. at 2 (denying transfer based in part on the fact that, "Defendant has provided no reason to believe that it must obtain an expert from [the proposed transferee district] rather than a location closer to the Western District of Wisconsin."); *Sitrick v. FreeHand Sys., Inc.*, No. 02-C-1568, 2003 WL 1581741, at *4 (N.D. Ill.

Mar. 27, 2003) (in patent case, according no weight to the parties' ability to obtain potential expert witnesses in either Illinois or Colorado.).

Transfer to Delaware, therefore, would not increase the convenience to either the parties or their witnesses, nor would it be necessary to secure attendance of any witnesses at trial. Intermec has utterly failed to meet its burden of showing that Delaware is more convenient than this District for the parties or their witnesses.[3]

### 2.    Documents Are Easily Accessible in Wisconsin

This Court has recognized that technological advances now permit documents to be easily and inexpensively transported to Wisconsin, thereby diminishing traditional concerns relating to the ease of access to documents. *Rexall Sundown,* slip op. at 4; *Revcor, Inc. v. Lau Indus., Inc.*, 04-C-927-S, slip op. at 3 (W.D. Wis. Feb. 11, 2004) (Exhibit D hereto). Indeed, both Intermec and Symbol have previously produced documents to each other in electronic form in the Delaware cases, and Symbol anticipates following that practice here. (*See* Schaefer Decl., ¶ 4.) Thus, in this case, the location of relevant documents is entitled to little, if any, weight. *See Sung v. Minnesota Mining & Mfg. Co.*, No. 2:02-CV-191, slip op. at 2 (E.D. Tex. Nov. 15, 2002) (Exhibit E hereto).

At the end of the day, Intermec has proffered nothing showing that Delaware will be more convenient than Wisconsin.

### D.    The Interest Of Justice Weighs Against Transfer

The interest of justice component focuses on the efficient functioning of the courts. *Coffey*, 796 F.2d at 221. Courts typically consider the transferee court's familiarity with the

---

[3]    Intermec does not even address, let alone demonstrate, that "Washington" is a more convenient location for this action than Wisconsin, Intermec Br., pp. 4-5, and, therefore, clearly has not met its burden of doing so.

applicable law[4] and the relative congestion of the court's docket.  *Id.*  The interest of justice will

be served if this action remains in this District.

## 1.    The Speed of This Court's Docket Will Ensure a Swift Resolution

The selection of a forum that will ensure a swift resolution of the action is an entirely

reasonable basis for choosing venue.  *Corning Gilbert*, slip op. at 3; *Parsons v. Chesapeake &*

*Ohio Ry. Co.*, 375 U.S. 71, 73 (1963) (holding that speed of docket is appropriate consideration

in deciding motion to transfer); *Leggett*, 2005 WL 1168360, at *2 (denying transfer; holding that

"[r]elative docket speed in this case also weighs against transfer").  Docket speed is particularly

important in patent cases because "rights are time sensitive and delay can often erode the value

of the patent monopoly."  *Corning Gilbert*, slip op. at 6.

One reason that Symbol selected this forum is that the parties will receive a more speedy

trial if this action remains in Wisconsin.[5]  The time to trial in Wisconsin is approximately 9

months.  (Schaefer Decl., Exh. A, Federal Judicial Caseload Statistics 2004.)  In contrast, the

time to trial in Delaware is 26.4 months.  (*Id.*)  This reason alone, therefore, is sufficient to deny

Intermec's motion.  *Corning Gilbert*, slip op. at 5 (denying transfer; holding that "the action is

likely to be resolved much more promptly here than in [the transferee forum], an important factor

in assessing the interest of justice").  The interest of justice therefore is best served by keeping

the action here.[6]  *Rexall Sundown*, slip op. at 6 (denying transfer; finding that, "[t]he likelihood

---

[4]        Intermec cannot and does not take issue with this Court's familiarity with the U.S. patent laws.

[5]        Symbol filed the Delaware action in that forum because that court was familiar with and had construed
several of those patents in a prior case.  (Schaefer Decl., ¶ 9.)  That court, however, has no familiarity with the
patents at issue in this case. (*Id.*)

[6]        Intermec argues that Symbol engaged in "forum-shopping" when it filed this action in Wisconsin.
(Intermec Br., p. 11.)  Forum-shopping, however, is only discouraged when "the plaintiff is trying to harass the
defendant or influence the outcome of the case."  *Mezzalingua v. Arris*, slip op. at 3.  Intermec has made no showing
that Symbol is doing anything other than trying to swiftly adjudicate this case.  There is nothing improper about
such conduct.  *Id.* (a plaintiff's "desire to obtain a swift resolution of dispute is hardly a pernicious motive").

of delay and the resulting increase in litigation expenses to the parties and harm to plaintiff's patent monopoly weigh heavily in favor of the matter's prompt resolution in this district").

> **2.     The Delaware Court Has No Familiarity**
> **with the Patents or Technology At Issue Here**

Unable to cite any convenience to be gained from transfer, Intermec attempts to argue that the pendency of an allegedly related action in Delaware supports transfer. More particularly, Intermec argues, without any basis, that Symbol's pending suit in the District of Delaware alleging that Intermec infringed Symbol's patents covering wireless technologies (the "Delaware Action")[7] raises questions of law and fact common to this action.     (Intermec Br., p. 3.) Intermec's argument is baseless. The Delaware Action is not related – it does not involve the same patents, technologies, or other issues as this action – and, therefore, there would be no advantage to transferring this action. *See Pall Corp. v. PTI Techs., Inc.,* 992 F. Supp. 196, 201 (E.D.N.Y. 1998); *Micro-Acoustics Corp. v. Bose Corp.*, 493 F. Supp. 356 (S.D.N.Y. 1980) (transfer denied despite other action where other action involved different issues, and different proofs); *Pfizer Inc. v. Perrigo Co.*, No. 95 CIV. 5072 (DC), 1996 WL 233692 (S.D.N.Y. May 7, 1996) (different products and patents).

> **a.     The Patents Are Wholly Unrelated**

The patents at issue here – U.S. Patent Nos. 5,243,655 and 5,457,308 (the "Wisconsin Patents") – are separate and distinct from those at issue in the Delaware Action; namely U.S. Patent Nos. 5,029,183, 5,479,441, 5,157,687 and 6,473,449 (the "Delaware Patents"). The Wisconsin Patents issued from applications different from and unrelated to the Delaware patents; they were invented by completely different people, and they have not been construed by the

---

[7]     Intermec counterclaimed alleging that Symbol is infringing six Intermec patents, covering technologies such as distributive processing, signature capture, multi-tasking operating systems, and battery monitoring.

Delaware court or any other court for that matter. (Schaefer Decl., ¶ 9.) Given the divergent

technological issues the cases present (discussed below), the prior art relevant to the Wisconsin

patents – as well as the persons of skill in the art capable of providing expert testimony – will be

different than in the Delaware Action. (*Id.* ¶ 7.)

### b.    The Technologies Differ

The relevant technologies in the two cases are entirely different as well. (*See generally*,

Declaration of Raymond A. Martino[8] in Opposition to Intermec Technology Corporation's

Motion to Transfer dated May 26, 2005 ("Martino Decl."), ¶ 8, ("there is absolutely *no* technical

similarity between" the patents at issue in Delaware and those at issue here).) The technology at

issue here relates to decoding of Reduced Space Symbology or RSS bar-codes and PDF417 bar-

codes. Bar-code decoding involves taking encoded data (a bar-code symbol), and decoding it

into data that a user can understand. (Martino Decl., ¶ 9.) For example, A PDF417 symbol is

shown below, which is encoded to contain the text "United States District Court for the Western

District of Wisconsin." A bar-code reader must have special decoding software to decode this

particular bar-code symbol (as opposed to other kinds of bar-code symbols, such as the familiar

UPC bar-code found on grocery and other items).



"United States District Court
for the Western District of Wisconsin"

(Martino Decl., ¶ 9.) The infringement-related discovery and trial in this case, therefore, will

focus on Intermec's PDF417 and RSS decoding software, and, more particularly, whether that

software decodes or comes to understand the coded information in a way covered by the patent

---

[8]    An electrical engineer employed by Symbol since 1987, Mr. Martino originally worked in the design and development of Symbol's bar-code readers and later worked in design and development of wireless technology products. (Martino Decl., ¶¶ 2-4.)

claims. Thus, broadly speaking, this case involves the process whereby decoding software deciphers certain bar-codes to reveal the useable embedded information.

Symbol's Delaware patents have *nothing* to do with how to decode bar-codes. (Martino Decl., ¶¶ 10-13.) Rather, they involve wireless technology used to transmit information in a wireless local-area network or WLAN, as illustrated below. (*Id.*)



A Wireless LAN (WLAN) consists of access points connected to a wired network (or standalone) and devices with client adapters.

Three of Symbol's Delaware patents relate to power-saving mode of operation, an important issue for portable, battery-powered devices in a WLAN. (*Id.*, ¶ 11.) The fourth patent relates to spread spectrum modulation technology relevant to sending data from point A to point B in a WLAN. (*Id.*, ¶ 13.) This dissimilarity between bar-code decoding technology and WLAN technology is further evidenced by the fact that the latter is developed primarily in Symbol's San Jose facility, while the former is primarily developed in New York. (*Id.*, ¶ 16.)

It is true that both bar-code decoding and wireless technologies are sometimes embodied in a single bar-code reader (because a bar-code reader is sometimes part of a wireless network). That does not change the fact that the two technologies are still wholly distinct. (*Id.*, ¶ 15.) As an

analogy, consider a car which has both an engine and a radio. Obviously, an engine involves completely different technology than a radio. (*Id.*, at ¶ 17.) Notwithstanding the use of these technologies in a single product (a car with radio and engine), a patent dispute involving the engine in that car would involve discovery, testimony, experts, claim constructions, prior art and proof completely different than that relevant to a patent dispute involving the radio. That is true here as well.

To put this in concrete terms – something Intermec assiduously avoids in favor of unsupported, generalized assertions that the cases are "related" – consider the completely different proof that the parties will offer on infringement and validity of the decoding patents asserted here versus the wireless patents in Delaware. Symbol will prove that Intermec infringes the decoding patents primarily through testimony of a software expert explaining, based on analysis of Intermec's decoding software, (1) how that software processes and converts encoded information; and (2) how that processing meets each the patents' claim limitations. (This expert likely will never have read the wireless patents and need not even understand Intermec's WLAN technology.) Intermec will counter with a similarly-skilled expert attempting to argue that (1) its software decodes bar-codes in a non-infringing way, and (2) the claimed decoding inventions are anticipated by or obvious when considered against prior art in the software decoding field. Pre-trial discovery, of course, would center on these issues as well. And, ultimately, while the jury will be told what a bar-code reader does, the technology they will need to understand and evaluate will be the process of decoding two particular bar-codes (rather than, for example, how data is captured or transmitted by a bar-code reader.) Wireless patents, technology, prior art and expertise simply will be irrelevant.

In contrast, to prove infringement of the Delaware wireless patents, Symbol will look to an electrical engineer to explain (1) how the power-saving mode of operation and other technology relating to wireless data transmission in Intermec's WLAN devices work; and (2) why the construed claims of the wireless patents read on that technology. Intermec will counter with its own electrical engineer trying to show that (1) its WLAN technology does not infringe, and (2) those patents are invalid based on prior art in that field. Decoding of bar-codes will be of no relevance at any phase of that action.

c.    **The Workings Of Bar-Code**
**Readers Will Not Be An Issue In Delaware**

Intermec next attempts to show a relationship between the Delaware Action and this one purportedly because claim language from one of four Symbol Delaware Patents and one of six patents Intermec has counterclaimed on in Delaware refer to the use of various technologies in a bar-code reader. Explaining the workings of a bar-code reader, however, will not be an issue in the Delaware case. (*See* Martino Decl., ¶¶ 18-21.)

Intermec's first points to its United States Patent No. 5,892,971, which it claims covers "a portable battery-powered hand-held processing device incorporating 'an indicia reader input system' in combination with other elements"; this, Intermec contends, includes a bar-code reader. (Intermec Br., pp. 7-8.) Assuming (without conceding) that the claim requires a bar-code reader, that doesn't make it a trial about the operation of bar-code readers. Far from it. Any bar-code reader would meet the limitation. (Martino Decl., ¶ 20.) No detailed understanding of the inner workings of a bar-code reader – and most certainly not the workings of the decoding software relevant to Wisconsin – will be required. (*Id.*) In fact, if the claim is construed to require a bar-code reader, Symbol, while likely advancing other non-infringement arguments, will not argue that its bar-code readers do not meet that limitation. (*Id.*)

Similarly, while Symbol's U.S. Patent No. 5,157,687 (the "'687 Patent") in Delaware requires a bar-code reader with a light source and light detector,[9] these are the most basic components of *any conventional bar-code reader*. (Martino Decl., ¶ 21.)  It is difficult to imagine a legitimate non-infringement position based on this element. (*See id.*) Intermec does not even try to make one.

Intermec's improper attempt to elevate bar-code readers to a central position in Delaware based on isolated claim language from two of the ten patents at issue simply does not square with the facts.  The presence of a bar-code reader will not be a point of serious contention, if at all, in Delaware. *See Square D Co. v. Medar, Inc.*, No. 94-184-SLR, 1994 WL 859606, at *2 (D. Del. Aug. 31, 1994) (transfer denied where patent action in transferee district involved different products from action in transferor district).

*          *          *

Given the many obvious differences between the Wisconsin and Delaware cases, Intermec's conclusory claim that they are "related" cannot be taken seriously.  A listing of the most salient differences between Wisconsin and Delaware makes that conclusion clear:

- Different patents
- Different applications and file histories
- Different inventorship documents
- Different inventors
- Different technologies – bar-code decoding versus wireless communication
- Different prior art
- Different experts
- Different Intermec/Symbol product engineers/developers
- Different Intermec/Symbol product development documents

---

[9]     The claim element more specifically requires "a light source for directing light toward a bar code symbol to be read and a light detector responsive to reflected light from a bar code symbol to generate an electrical signal containing bar code data." (*See* Intermec Br., p 8, *quoting* '687 Patent, Claim 1.)

- Different products
- Different documents regarding product capabilities and operation
- Different opinions of counsel (if applicable)

Because of these enormous differences, there would be no advantage to having these actions pending before the same Court and therefore transfer is not appropriate. *See, e.g., Corning Gilbert,* slip op. at 5 (denying transfer where "defendant presents nothing that would suggest common issues in the cases, that consolidation of the cases is desirable or that any efficiencies would be gained by having them in the same court"); *Truth Hardware Corp. v. Ashland Prods, Inc.*, No. C.A. 02-1541 GMS, 2003 WL 118005, at *1 (D. Del. Jan. 13, 2003) (denying transfer to forum where related action pending; holding that "[w]hile the court does not doubt that the Illinois court may be more familiar with the technology at this juncture, the present court is amply qualified to likewise familiarize itself.")

### 3. Because This Action Would Not Be Consolidated With the Delaware Action, Transfer is Not Warranted

Intermec's argument that transfer will promote judicial efficiency fails because, if transferred, the cases will not be consolidated.

Consolidation under Federal Rule of Civil Procedure 42(a) requires that the actions pending before the same court – a threshold requirement clearly not satisfied here – involve common issues of law and fact. Where, as here, actions "stem from different factual circumstances, consolidation is not appropriate." *In re Stone & Webster, Inc.*, CIV. 04-834-SLR, 2005 WL 1036556, at *5 n.9 (D. Del. May 3, 2005) (Robinson, C.J., before whom the Delaware Action is pending).[10]

---

[10]    Intermec relies principally upon *Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (D. Del. 1986), in support of transfer. That case is wholly inapposite. First, that case addressed consolidation of cases within the same judicial district, not transfer. Second, unlike here, the two patents at issue involved "virtually identical" claims

Intermec, of course, does not even suggest that it would move to consolidate the actions if transfer is granted, and it is highly unlikely that the Delaware Court would *sua sponte* consolidate the cases. That is evidenced by the fact that the Delaware Court has not sought consolidation of the two patent infringement actions between Intermec and Symbol already pending there. Rather, those actions are pending before two different judges; they involve different patents, with different inventors, etc. and are subject to different discovery schedules and will be tried separately.[11] (Schaefer Decl., ¶ 3.)

Indeed, the district judge assigned to Symbol's Delaware litigation – Chief Judge Robinson – has recognized that litigation involving multiple patents covering varying technologies can be unmanageable and confusing. *Syngenta Seeds, Inc. v. Monsanto Co.*, No. C.A. 02-1331-SLR, 2004 WL 2002208, at *2 (D. Del. Aug. 27, 2004) (Robinson, C.J.) (denying consolidation; holding that, "[a]dding another patent to the plaintiff's claims will only increase the case's complexity and make it that much harder for a jury to come to a resolution."). In Symbol's experience, Chief Judge Robinson has even ordered separate trials on direct claims and counterclaims in a single action relating to the same technology.[12] Thus, there is every reason to believe – and Intermec certainly offers nothing to the contrary – that the Delaware court would not consolidate *separate patent cases involving twelve patents (from seven different families) on wildly different technologies.* Certainly it would not try all the patent claims at one time.

---

for "essentially the same process," invented by the same inventor and covered by the same prior art. *Id.* at 28. No such similarities exist here between the patents or technologies at issue here and in Delaware.

[11]    *Intermec IP Corp. v. Symbol Technologies, Inc.*, No. 04-CV-357 (GMS) (D. Del.) (Sleet, J.) and *Symbol Technologies, Inc. v. Intermec Technologies Corp.*, No. 05-CV-146 (SLR) (D. Del.) (Robinson, C.J.).

[12]    In that case, Symbol sued on four related WLAN patents, and the defendant, Proxim, counterclaimed with one of its own WLAN patents. (Schaefer Decl., ¶ 10.) Ultimately, Symbol dropped one of its patents from the case, and there were a total of four patents at issue in the case, all relating to aspects of WLAN technology. (*Id.*) Although neither party moved to sever Proxim's counterclaim from Symbol's, Chief Judge Robinson *sua sponte* had Symbol's patent claims and Proxim's patent counterclaim tried to separate juries. (*Id.*)

In short, transfer to Delaware would not serve the interest of justice because this action would not be consolidated with the Delaware Action.

### 4.     Intermec Faces No Risk of Inconsistent Damage Decisions

Intermec finally argues that "transfer for consolidation would still be warranted because of common damage questions and to avoid exposing Intermec to the risk of inconsistent damage decisions." (Intermec Br., p. 8.) Intermec's reliance on authority precluding damages on a *claim by claim basis* within a single patent is misplaced. (*See* Intermec Br., p. 8, citing *Square Liner 360 Degrees, Inc. v. Chisum*, No. 4-76-CIV. 134, 1981 WL 48168 (D. Minn. Nov. 2, 1981) (reversed on appeal.))[13]   Symbol is not alleging in two different lawsuits that Intermec is infringing one or more claims in a single patent. Symbol alleges that Intermec infringes the claims of separate and distinct patents. There are two patents at issue here, and four different patents are at issue in Delaware. Damage awards for patent infringement are governed by 35 U.S.C. § 284 which allows recovery of "damages adequate to compensate for the infringement but in no event less than a reasonable royalty. . . ." Symbol is entitled to recover damages for infringement of each of those patents. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 n.8 (Fed. Cir. 1983) ("it may well be necessary to determine damages separately for each such patent since a patent owner has every right to demand royalties for each patent he holds"). Once the patent owner is fully compensated, the infringer is, of course, relieved from liability. Thus, even if Symbol were somehow seeking to collect twice for the same infringement – which it is not – the law prohibits it. There is no risk, therefore, of double recovery on Symbol's infringed products.

---

[13]     The remainder of the cases cited by Intermec on this point, (*see* Intermec Br., pp. 9-10), are similarly inapposite.  Those cases merely state the standard for patent damages; not a single case cited by Intermec for this point has facts remotely like the facts in this case.

## CONCLUSION

For all of the above reasons, Symbol respectfully requests that its choice of forum be preserved, and Intermec's motion to transfer venue to the District of Delaware or, in the alternative, to Washington, be denied.

MICHAEL BEST & FRIEDRICH LLP

By: _____
Jeffrey S. Ward
Shane A. Bruner
Michael A. Hughes
One South Pinckney Street
Suite 700
Madison, Wisconsin 53703
(608) 257-3501

*Attorneys for Plaintiff Symbol Technologies, Inc.*

Of Counsel:

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022

Dated: May 27, 2005

11A

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN MEZZALINGUA ASSOCIATES, INC.
d/b/a PPC, INC.,

                                                    ORDER
                        Plaintiff,

                                                    03-C-353-C
        v.

ARRIS INTERNATIONAL, INC.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff PPC, Inc., and defendant Arris International, Inc. are competitors in

manufacturing and selling coaxial cable connectors.  In this action, plaintiff contends that

connectors made by defendant infringe on a patent owned by plaintiff.  A hearing on

plaintiff's motion for a preliminary inunction is scheduled for July 23, 2003.

        Now before the court is defendant's motion under 28 U.S.C. § 1404(a) to transfer

this case to the United States District Court for the District of Colorado.  The parties agree

that this court has subject matter jurisdiction to hear this case and that the court may

exercise personal jurisdiction over all of the parties.  In addition, they agree that venue is

proper in this district.  However, defendant argues that the court should exercise its

discretion to transfer the case because Colorado's connection is significantly greater than

A copy of this document
has been mailed to the following:
Attys of record
this 21st day of July, 2003 by
S. Vogel, Secretary to Judge Crabb

that of Wisconsin.

In considering a motion to transfer under § 1404(a), a court must consider two factors: (1) the convenience of the parties and witnesses; and (2) the interests of justice. With respect to the first factor, defendant argues that its witnesses work and reside in Colorado and that documentary evidence relevant to the action is located there. I am not persuaded that these factors weigh heavily in favor of transfer. First, defendant has failed to articulate with any specificity *who* in Colorado will need to travel to Wisconsin to testify or how many witnesses from there it believes it will need. Defendant has the burden to show that Colorado rather Wisconsin is the more appropriate venue for this case; it cannot rely on generalized, unsubstantiated assertions. Furthermore, it is unlikely that there are many witnesses essential to defendant's case in Colorado. Generally, witnesses in patent cases are fewer and less important than in many other types of disputes; it is the patent, its specification and its prosecution history that are the central focus. The most important witnesses are experts. Defendant has provided no reason to believe that it must obtain an expert from Colorado rather than a location closer the Western District of Wisconsin. The location of documentary evidence is even less persuasive. Moving documents from one place to another is exceedingly common in the context of litigation. This burden alone is not sufficient to show that this case should be tried in Colorado.

With respect to the interests of justice, defendant argues that this factor favors Colorado because two related cases are pending there now. Although it contends that there

are "overlapping patent issues" in each of these cases, it fails to identify what these issues are. As plaintiff points out, one of the cases in Colorado is concerned with the design rather than the function of the connectors. The second case also involves a different patent and discovery in that case has closed. Defendant has not argued that this case could be consolidated with either of the pending cases or that there is a danger of inconsistent judgments. In short, defendant has not persuaded me that the existence of the cases in Colorado necessitates transfer.

Admittedly, Wisconsin's connections to the issues in this case are no greater than many other states'. But this does not necessarily entitle defendant to a transfer to the district of its choice. By engaging in business in Wisconsin, defendant has subjected itself to be sued here. I disagree with defendant that plaintiff engaged in inappropriate "forum-shopping" by choosing this district to file suit because its docket moves faster than other districts. The desire to obtain a swift resolution of dispute is hardly a pernicious motive. Generally, forum-shopping is discouraged if the plaintiff is trying to harass the defendant or influence the outcome of the case. Defendant has made no showing that plaintiff was motivated by either of these factors in this case. The Supreme Court has recognized that the relative speed of two districts is an appropriate consideration in deciding whether to transfer a case. Parsons v. Chesapeake & O. Railway Co., 375 U.S. 71 (1963). Although this district's speed would be insufficient by itself to overcome a motion to transfer when other factors show that another venue is clearly more convenient, in this case defendant has failed

to demonstrate that there would be any significant benefit to trying this case in Colorado.

ORDER

IT IS ORDERED that defendant Arris Interational, Inc's motion to transfer this case

to Colorado under 28 U.S.C. § 1404(a) is DENIED.

Entered this ___2/2/___ day of July, 2003.

BY THE COURT:

*Barbara B Crabb*

BARBARA B. CRABB
District Judge

11B

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

REXALL SUNDOWN, INC.,

                    Plaintiff,

                                        MEMORANDUM AND ORDER
        v.                              03-C-613-S

WEIDNER NUTRITION INTERNATIONAL, INC.
and LEINER HEALTH PRODUCTS, INC.,

                    Defendants.

REXALL SUNDOWN, INC.,

                    Plaintiff,

        v.                                  03-C-620-S

PHARMAVITE LLC,
                    Defendant.

Plaintiff Rexall Sundown, Inc. commenced these consolidated actions alleging that glucosamine/chondroitin nutritional supplements sold by defendants Weidner Nutrition International, Inc., Leiner Health Products, Inc., and Pharmavite, LLC infringe plaintiff's United States Patent no. 6,358,526. Jurisdiction is based on 28 U.S.C. § 1331 and 1338(a). The matter is presently before the Court on motions by defendants Leiner and Pharmavite to transfer venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). The following facts relevant to the question of venue are not disputed.

Copy of this document has been
provided to: Attys Axel Reuter
Cahil, Bank, Brunker Sokoloff
this ___ day of ___, 2004
by ___
M. Hardin, Secretary to
Judge John C. Shabaz

## BACKGROUND

Plaintiff Rexall is a Florida corporation with its principal places of business in Florida and New York. Defendant Weider is a Delaware corporation with its principal place of business in Utah. Defendant Leiner is a Delaware corporation with its principal place of business in Carson, California. Defendant Pharmavite is a California limited liability company with its principal place of business in Northridge, California.

The parties are competitors in the manufacture and sale of glucosamine/chondroitin supplements. Plaintiff sells its glucosamine/chondroitin product in Wisconsin. Defendants also sell their accused glucosamine/chondroitin products in Wisconsin where they compete directly with plaintiff's product.

## MEMORANDUM

Defendants' motion for change of venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

There is no question that this action might have been brought in the United States District Court for the Central District of California. Accordingly, the Court's inquiry focuses solely on "the convenience of parties and witnesses, in the interest of

2

justice."   In  ruling  on  this  motion  the  Court  considers  all
circumstances  of  the  case  using  the  three  statutory  factors  as
place  holders  in  its  analysis.   <u>Coffey v. Van Dorn Iron Works</u>, 796
F.2d 217, 219 (7th Cir. 1986).   Defendants bear the burden to prove
that  the  Central  District  of  California  is  clearly  a  more
convenient  venue.   Defendants are unable to meet that burden.

<u>The Convenience of the Parties and Witnesses</u>

Plaintiff has principal places of business in Florida and New
York and identifies several witnesses and the bulk of its documents
as located along the East Coast.   Defendants Leiner and Pharmavite
have  principal  places  of  business  in  California  and  identify
several  witnesses  and  the  bulk  of  their  documents  as  located  in
California.   Accordingly, the Western District of Wisconsin is a
more  convenient  venue  to  plaintiff,  and  the  Central  District  of
California is a more convenient venue to Leiner and Pharmavite.

Defendants do not explain which venue would be more convenient
to defendant Weider other than to note that Weider does not oppose
transfer and that Weider's principal place of business is in Utah,
which is geographically closer to California than Wisconsin.   This
cursory  discussion  of  Weider's  convenience  is  insufficient.
Defendants  have  failed  to  meet  their  burden  to  show  that  the
Central District of California is clearly a more convenient venue
to Weider than the Western District of Wisconsin.

3

Technological advancements have diminished traditional forum non conveniens and 1404(a) concerns related to the ease of access to sources of proof and the cost of obtaining the attendance of witnesses. While geographic concerns remain a part of the analysis, the Court is mindful that the relevant documents and witnesses can be transported to this district in a fast and relatively inexpensive manner. Especially in patent infringement litigation where the accused products have been sold nationally, witnesses are predominantly party employees and experts, and the relevant sources of proof consist of patents and other easily transportable items, geographic concerns often give way to broader interests of justice.

## Plaintiff's Choice of Forum and Interests of Justice

Defendants argue that the balance of the interests of justice favor transfer. Specifically, defendants argue that this district lacks a sufficient connection to the dispute because none of the parties are domiciled in this district and only a small percentage of Pharmavite's and Leiner's accused products were sold in Wisconsin. The Court is not persuaded, however, that the interests of justice favor transfer. To the contrary, they weigh heavily in favor of this district.

As a general rule a plaintiff's choice of forum is entitled to substantial weight. Defendants suggest that plaintiff's choice

should be afforded less weight because it has not chosen its home forum or a forum where a substantial percentage of defendants' accused products were sold.   However, there is no suggestion that plaintiff's choice of forum was motivated by any improper purpose such as a desire to vex, harass, or oppress defendants.   <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 508 (1946).   Rather, the parties agree that plaintiff's choice was motivated by the relative speed of this Court's docket.

In exercising its choice of venue, plaintiff has sacrificed some geographical convenience to itself in the interest of obtaining a swift resolution of the dispute.   The relative speed with which an action may be resolved is an important consideration when selecting a venue.   <u>Parson v. Chesapeake & O. Ry. Co.</u>, 375 U.S. 71, 73 (1963). <u>Compare</u> Fed. R. Civ. P. 1 ("shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"), <u>with</u> Fed. R. Civ. P. 11(b)(1) ("not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation").   The relative speed with which an action may be resolved is particularly important in a patent infringement action where rights are time sensitive and delay can often erode the value of the patent monopoly.   Accordingly, plaintiff's choice of forum is entitled to substantial deference.

5

Defendants recognize that this Court's docket practices will ensure a relatively prompt resolution of the dispute. The likelihood of delay and the resulting increase in litigation expenses to the parties and harm to the plaintiff's patent monopoly weigh heavily in favor of the matter's prompt resolution in this district. Defendants have not produced evidence sufficient to demonstrate that the Central District of California would be a clearly more convenient forum. Accordingly, defendants' motions to transfer venue must be denied.

ORDER

IT IS ORDERED that defendants' motions to transfer venue are DENIED.

Entered this 7th day of January, 2004.

BY THE COURT:

JOHN C. SHABAZ
District Judge

11C

RECEIVED
JUL 2 3 2003
BY:-------------------

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

JOHN MEZZALINGUA ASSOCIATES, INC.,
d/b/a PPC, INC.,

                    Plaintiff,

          v.                                    MEMORANDUM AND ORDER
                                                   03-C-354-S

CORNING GILBERT, INC.,

                    Defendant.

_____

     Plaintiff John Mezzalingua Associates, Inc. commenced this
patent infringement action alleging that coaxial cable "UltraSeal"
connectors made and sold by defendant Corning Gilbert, Inc.
infringe plaintiff's United States Patent no. 6,558,194.
Jurisdiction is based on 28 U.S.C. § 1331 and 1338(a). The matter
is presently before the Court on defendant's motion to transfer
venue to the United States District Court for the District of
Arizona pursuant to 28 U.S.C. § 1404(a). The following facts
relevant to the question of venue are not disputed.


                              FACTS

     Plaintiff is a Delaware Corporation with its principal place
of business in East Syracuse, New York. Defendant is a Delaware
Corporation with its principal place of business in Glendale,

Copy of this document has been
provided to Skilton, McBewin,
Sandercock + Saro
this 23rd day of July, 20 03
by J. McNeal
J. McNeal, Secretary to

Arizona. The parties are competitors in the manufacture and sale of coaxial cable connectors, actively selling and competing for sales in Wisconsin and throughout the United States. Defendant has sold its UltraSeal connector in the United States since June 1998.

Plaintiff has one employee witness in Wisconsin. The balance of its employee witnesses reside in New York. Defendant's employee witnesses reside primarily in Arizona. Neither party has suggested relevant non-party witnesses for whom a subpoena will be required.

In May 2001 plaintiff filed a suit against defendant in the Southern District of Florida alleging that defendant's UltraSeal connector infringed certain of plaintiff's connector design patents. That case was transferred to the District of Arizona where discovery has been closed and trial is pending.

The '194 patent issued on May 6, 2003. Plaintiff filed this action on July 1, 2003 and on the same day filed a similar infringement action in this Court against a third competitor in the coaxial cable connector market, Arris International, Inc.


MEMORANDUM

A motion for change of venue is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

2

There is no question that this action might have been brought in the District of Arizona. Therefore, the Court's inquiry focuses solely on "the convenience of parties and witnesses, in the interest of justice." In ruling on a § 1404(a) transfer motion the Court must consider all the circumstances of the case, using the three statutory factors as place holders in its analysis. <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219 (7th Cir. 1986). Defendant bears the burden to prove that the District of Arizona is clearly more convenient for trial of the case. Defendant is unable to meet that burden.

The plaintiff's place of business and the forum geographically most convenient for it is New York. Plaintiff chose this forum because the Western District of Wisconsin has a less congested docket than its home forum, thereby sacrificing geographical convenience in the interest of a swift resolution of the dispute. This is an entirely reasonable basis for choosing venue which is entitled to deference unless the three factors establish that another jurisdiction is clearly more convenient. They do not.

<u>Convenience of Parties and Witnesses</u>

Defendant does not suggest that it is less convenient for it to come to Wisconsin than New York. Rather, it argues that plaintiff's choice is less convenient to plaintiff and transfer to Arizona enhances the convenience of the parties. The Court is

3

reluctant to accept defendant's determination of that venue which is more convenient to plaintiff. Plaintiff does not view itself as substantially inconvenienced by venue in Wisconsin, and the Court accepts plaintiffs assessment of its own convenience. Just as if plaintiff had filed suit in New York, a transfer must be viewed as a mere shift of inconveniences which does not justify transfer of venue. Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989).

Had plaintiff chosen a forum significantly less convenient to defendant even at some inconvenience to itself for purpose of disadvantaging defendant, its choice could be readily disregarded. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). However, plaintiff's choice of venue does not inconvenience defendant compared to plaintiff's home venue, and there is no indication that it was chosen to impose inconvenience on defendant.

Neither does the convenience of witnesses significantly favor transfer. Typically the most important consideration in analyzing the convenience of witnesses factor is whether witnesses will appear only by deposition because they are outside the subpoena power of the court. The parties do not identify potential third-party witnesses who are not either employed or otherwise within the control of the parties. Accordingly, there is little risk that any witness with important testimony will fail to appear since all are closely aligned with the parties. 15 C. Wright, A. Miller and E.

4

Cooper, <u>Federal Practice and Procedure</u>, § 3851 n. 7 (1986).  In
fact, given the nature of the patent infringement question it is
not clear how many employee witnesses will have material testimony
to offer.  Assuming some employees will have relevant testimony,
the same shift of inconveniences analysis that applies to the
convenience of the parties would apply.


<u>Interest of Justice</u>

There is nothing to suggest that a transfer to Arizona would
further the interest of justice.  The principal argument advanced
by defendant in support of transfer is the presence of a two-year-
old design patent infringement case involving the same parties and
products.  However, defendant presents nothing that would suggest
common issues in the cases, that consolidation of the cases is
desirable or that any efficiencies would be gained by having them
in the same court.  In contrast, the two cases pending in Wisconsin
could have substantial issues in common such that resolving the
cases in a single court would promote judicial efficiency, whether
or not the cases are ultimately consolidated.

Finally, the action is likely to be resolved much more
promptly here than in Arizona, an important factor in assessing the
interest of justice.  <u>Parsons v. Chesapeake & O. Ry. Co.</u>, 375 U.S.
71, 73 (1963); Rule 1, Fed. R. Civ. P.  This is particularly so in

5

a patent infringement case where rights are time sensitive and delay can often erode the value of the patent monopoly.

ORDER

IT IS ORDERED that defendant's motion to transfer venue to the United States District Court for the District of Arizona is DENIED.

Entered this 22nd day of July, 2003.

BY THE COURT:

JOHN C. SHABAZ
District Judge

11D

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

REVCOR, INC.,

                    Plaintiff,

                                        MEMORANDUM AND ORDER
    v.                                  04-C-927-S

LAU INDUSTRIES, INC.,

                    Defendant.

    Plaintiff Revcor, Inc. commenced this patent infringement action alleging that fan blades manufactured and sold by defendant Lau Industries, Inc. infringe plaintiff's United States Patent Nos. 6,712,584 and 6,814,545.   Jurisdiction is based on 28 U.S.C. § 1338(a).   The matter is presently before the Court on defendant's motion to transfer venue to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).   The following facts relevant to the question of venue are not disputed.

BACKGROUND

    Plaintiff Revcor, Inc. is a Delaware corporation with its principal place of business in Carpentersville, Illinois.   Defendant Lau Industries, Inc. is a Delaware corporation with its principal place of business in Dayton, Ohio.

    The parties are competitors in the manufacture and sale of fan blades.   Defendant's fan blades are sold in Wisconsin where they compete directly with plaintiff's fan blades.

RECEIVED FEB 1 5 2005
RECEIVED FEB 1 5 2005

Copy of this document has been
provided to: Arthur Harmon
Eads F. Lutan
this 11 day of Feb. 2005
by M. Hardin, Secretary to
Judge John C. Shabaz

MEMORANDUM

Defendant's motion for change of venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

There is no question that this action might have been brought in the United States District Court for the Southern District of Ohio. Accordingly, the Court's inquiry focuses solely on "the convenience of parties and witnesses, in the interest of justice." In ruling on this motion the Court considers all circumstances of the case using the three statutory factors as place holders in its analysis. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). Defendant bears the burden to prove that the Southern District of Ohio is clearly a more convenient venue. Defendant is unable to meet that burden.

The Convenience of the Parties and Witnesses

Defendant has its principal places of business in Dayton, Ohio and identifies several witnesses and the bulk of their documents as located in Ohio. Plaintiff has its principal place of business in Carpentersville, Illinois. It includes the relative speed of this Court's docket and the convenience of its Wisconsin-based attorneys among its reasons for filing suit in this district. The Court is reluctant to accept either party's determination of the other's most

2

convenient venue and instead accepts each party's assessment of its own convenience.  The Southern District of Ohio is a more convenient venue to defendant.  The Western District of Wisconsin is a more convenient venue to plaintiff.  A transfer would accomplish a mere shift in party inconvenience.  Accordingly, the convenience of the parties does not weigh in favor of either district.  <u>Heller Fin., Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1293 (7th Cir. 1989).

Defendant does not suggest any potential third-party witnesses who are not either employed by or otherwise within the control of the parties.  Accordingly, there is little risk that any witness with important testimony will fail to appear in this district since all are closely aligned with the parties.  15 C. Wright, A. Miller and E. Cooper, <u>Federal Practice and Procedure</u>, § 3851, at 420-32 (1986).

Technological advancements have diminished traditional forum non conveniens and 1404(a) concerns related to the ease of access to sources of proof and the cost of obtaining the attendance of witnesses.  While geographic concerns remain a part of the analysis, the Court is mindful that the relevant documents and witnesses can be transported to this district in a speedy and relatively inexpensive manner.  Especially in patent infringement litigation where the accused products have been sold nationally, witnesses are predominantly party employees and experts, and the relevant sources

3

of proof consist of patents and other easily transportable items, geographic concerns often give way to broader interests of justice.

Plaintiff's Choice of Forum and Interests of Justice

Defendant argues that the balance of the interests of justice favor transfer. Specifically, defendant argues that this district lacks a sufficient connection to the dispute because none of the parties are domiciled in this district and the accused products were designed, developed and tested in Ohio, not Wisconsin. The Court is not persuaded, however, that the interests of justice favor transfer. To the contrary, they weigh heavily in favor of this district.

As a general rule a plaintiff's choice of forum is entitled to substantial weight.  Defendant suggests that plaintiff's choice should be afforded less weight because it has not chosen its home forum.  However, there is no suggestion that plaintiff's choice of forum was motivated by any improper purpose such as a desire to vex, harass, or oppress defendant. Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1946).  Rather, the parties agree that plaintiff's choice was motivated by the relative speed of this Court's docket.

In exercising its choice of venue, plaintiff has sacrificed some geographical convenience to itself in the interest of obtaining a swift resolution of the dispute.  The relative speed with which an action may be resolved is an important consideration when selecting a venue. Parson v. Chesapeake & O. Ry. Co., 375 U.S. 71, 73 (1963). Compare Fed. R. Civ. P. 1 ("shall be construed and administered to

4

secure the just, speedy, and inexpensive determination of every action"), <u>with</u> Fed. R. Civ. P. 11(b)(1) ("not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation").  The relative speed with which an action may be resolved is particularly important in a patent infringement action where rights are time sensitive and delay can often erode the value of the patent monopoly.  Accordingly, plaintiff's choice of forum is entitled to substantial deference.

Defendant recognizes that this Court's docket practices will ensure a relatively prompt resolution of the dispute.  The likelihood of delay and the resulting increase in litigation expenses to the parties and harm to plaintiff's patent monopoly weigh heavily in favor of the matter's prompt resolution in this district.  Defendant has not produced evidence sufficient to demonstrate that the Southern District of Ohio would be a clearly more convenient forum. Accordingly, defendant's motion to transfer venue must be denied.

ORDER

IT IS ORDERED that defendant's motion to transfer venue is DENIED.

Entered this 11th day of February, 2004.

BY THE COURT:

JOHN C. SHABAZ
District Judge

II E

EOD NOV. 15 '02

FILED-CLERK
U.S. DISTRICT COURT

02 NOV 15 AM 11: 28

TEXAS EASTERN

BY_____

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| CHIEN-MIN ("JAMES") SUNG | § | |
| Vs. | § | CIVIL ACTION NO. 2:02-CV-191 — TJW |
| MINNESOTA MINING & MANUFACTURING COMPANY | § | |

**ORDER**

The court denies the defendant's motion for change of venue (#4) for the reasons expressed

in this order.

In this patent infringement case, the plaintiff, a Taiwanese resident, owns U.S. Patent No.

6,039,641 ( "the '641 patent"). The '641 patent involves, in general, the controlled placement of

diamond abrasive particles and a way to affix those diamonds to a tool so that a firm, chemical bond

is created between the tool and the diamond. According to the lawsuit, one application of the tool

is useful in the manufacture of semiconductor chips–chips that are widely present in a variety of

electronics, consumer products and computers. The claim is that the defendant infringes the '641

patent in connection with the defendant's manufacture and sale of a diamond pad conditioning disk.

The defendant has filed a motion to change venue to Minnesota. The motion urges that

Minnesota, rather than Texas, is a substantially more convenient forum and that the factors which

govern the § 1404(a) analysis, save only a couple, weigh in favor of a transfer. The court's review

of the factors in the context of this case reveals otherwise.



1

In *Time, Inc. v. Manning*, Judge Wisdom stated "[t]he plaintiff's privilege to choose, or not be ousted from his chosen forum is highly esteemed." 366 F.2d 690, 698 (5th Cir. 1966). This court begins its analysis under § 1404(a) with a healthy regard for the Court of Appeals' statement. *See also Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987)(noting a "strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point toward trial in the alternative forum"). The plaintiff's choice of this venue is entitled to weight in the § 1404(a) analysis.

The court next considers the convenience of the witnesses. In this patent case, as the plaintiff points out, expert witnesses will likely constitute a substantial portion of the evidence. In the court's view, the convenience of expert witnesses under the control of the respective litigants is not a factor which weighs in favor of a transfer. As to key, third party fact witnesses, the court is not persuaded that retention of the case in this district will unduly interfere with the defendant's (or the plaintiff's) litigation of this lawsuit. The court notes that 3M routinely litigates patent actions in the state of Texas and has a substantial presence in the state of Texas.

In the court's view, the location of the documentary evidence in this type of case is entitled to little weight. Party litigants routinely copy and forward *en masse* the documents responsive to discovery and disclosure obligations. Electronic mailing of discoverable information is also a routine practice in these cases. The origination point of those mailings is entitled to little weight in the court's view. And, in any event, the plaintiff has demonstrated that a number of relevant documents are located in Washington, D.C.. A transfer to Minnesota would not materially increase the convenience of this litigation to the parties or their witnesses as far as this factor is concerned.

The location of counsel in this case is entitled to little, if any weight. Both sides have out-of-

2

state counsel and both sides have local counsel. As such, this factor is not material to the court's analysis.

The possibility of delay of the resolution of this action is slight. The court notes, however, that the median time to trial is approximately five months longer in Minnesota. As such, to the extent this factor is credited, it weighs slightly against a transfer.

As to the public interest factors, the case presents as one of "nationwide infringement." It is true that Minnesota residents would have some interest in determining whether a Minnesota corporation is infringing a patent. It is equally true that a transfer of this case to the defendant's home district would give it an advantage it does not enjoy here. It is for this reason that the venue statutes offer a range of options, in some cases, from which a plaintiff may choose. There are no serious administrative difficulties that will arise from failing to transfer this case, and the citizens of this district have a general interest in ensuring the enforcement of the patent laws. On balance, the court is not persuaded that the private and public interest factors relevant to the transfer analysis overcome the plaintiff's choice of forum. The court therefore denies the motion to change venue.

So **ORDERED** and **SIGNED** this 15th day of November, 2002.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

3