# HOGAN & HARTSON
L.L.P.

LAWRENCE V. BROCCHINI  
PARTNER  
(212) 918-8275  
LBROCCHINI@HHLAW.COM

July 1, 2005

875 THIRD AVENUE  
NEW YORK, NEW YORK 10022  
TEL (212) 918-3000  
FAX (212) 918-3100  
WWW.HHLAW.COM

**BY EMAIL**

Leland W. Hutchinson, Jr., Esq.  
Freeborn & Peters LLP  
311 South Wacker Drive, Suite 3000  
Chicago, Illinois 60606-6677

      Re:   *Symbol Technologies, Inc. v. Intermec Technologies Corp.*  
             – W.D. Wisconsin

Dear Mr. Hutchinson:

      This will confirm our discussion yesterday concerning the issues raised in my June 27 letter relating to Intermec's Response to Symbol Technologies, Inc.'s First Set of Interrogatories and Intermec's Responses to Symbol Technologies, Inc.'s First Set of Requests for Production [Sic] and Things.

      First, you stated that while Intermec disagrees with Symbol's position on the merits that Intermec's imaging scanners are covered by the patents in suit, Intermec nevertheless would withdraw its objection to document requests and interrogatories based on its position that imagers do not "scan." Intermec, therefore, agrees to produce documents and answer interrogatories relating to its imaging scanners that read/decode PDF and RSS.

      Second, you generally proposed a stipulation excluding from discovery laser scanners that incorporate Symbol laser scan engines purchased from Symbol under the OEM Agreement which are, as you put it, "immune from suit." Subject to further verification from your client, you represented that all of Intermec's laser scanners that read/decode PDF417 and/or RSS use such Symbol laser engines. I responded that Symbol, of course, is only interested in obtaining relevant (as defined under FRCP 26) materials. Further, however, I stated that documents relating to such Intermec laser scanners, for example marketing documents showing the desirability of a decoding feature, might still be relevant to the case. As another example, since Intermec contends that the patents are limited only to laser scanners, and not imaging scanners, the similarity of the data acquisition and

HOGAN & HARTSON L.L.P.

Leland W. Hutchinson, Jr., Esq.
July 1, 2005
Page 2

decoding software in Intermec's imaging scanners relative to its laser scanners is relevant to the issue of equivalents. Additionally, Intermec has publicly announced that it will be selling laser scanners using either an Intermec laser engine or non-Symbol laser engine.  Obviously, all documents concerning those scanners which Intermec will be relevant.  During the call I also said that it was difficult to discuss a stipulation in the abstract.  So, I suggested that you forward, and you agreed to provide, a draft stipulation for our consideration.  We can discuss this issue further after we have received and considered your proposal.  In the mean time, as we agreed, this issue should not hold up other discovery, including regarding Intermec's imaging scanners.

Third, with respect to your objection to Interrogatory No. 2, which then requires a response, not provided, to Interrogatory No. 3, based on Intermec's view that Symbol failed to define what it means by "RSS," you stated that, while Intermec still contends that there are varying types of RSS in the marketplace notwithstanding its general marketing of products that read/decode RSS, Intermec will provide information and documents regarding such products that read/decode any type or variety of RSS.  Thus, Intermec has withdrawn its objection based on the meaning of "RSS."

Fourth, on Interrogatory Nos. 4, 5, 6 and 7 (Intermec agreed to answer Nos. 1, 2 and 3 as part of the discussion above), you stated that Intermec will provide additional information as requested (which you called a "supplemental" answer, and I termed an initial answer).

Fifth, with respect to Interrogatory No. 8, you stated that you need to confer with your client and advise us as to whether Intermec would provide the requested information.  While we cannot understand why you would not have consulted with your client previously to resolve this issue, please let us know immediately what Intermec's position will be, so we can promptly raise the issue with the Court if necessary.

Finally, as to timing regarding the above, despite the request in my letter that you provide a date certain when production would begin and be completed, you could not provide such a date, though you stated that Intermec is not now in a position to provide any documents.  Similarly, you did not provide a date on which Intermec would provide interrogatory answers it has now agreed to provide as discussed above.  Part of the reason you cited for Intermec's inability to provide this requested information was difficulty in setting up a time for you to

HOGAN & HARTSON L.L.P.

Leland W. Hutchinson, Jr., Esq.
July 1, 2005
Page 3

travel to France to obtain information to answer interrogatories and obtain decoding source code and other documents residing there. That, you claimed, could not be done until the week of July 10. Thus, you committed only to providing information and documents at some unidentified time after those meetings during the week of July 10.

We disagree that the purported need to meet in person with Intermec's own employees in France (or any other reasons) justifies Intermec's failure again (Intermec's Rule 26 initial disclosures were also late) to provide timely disclosure. The requested information and documents could easily be gathered by phone, videoconference, email, overnight delivery and/or an earlier trip to France. For example, information responsive to Interrogatory No. 4 regarding non-infringement contentions could easily be obtained by phone; source code can easily be downloaded to a hard drive or CD (which is likely how you will produce it to us) and mailed. We would at least have expected Intermec to have started producing documents from the United States, which would not be impacted by the timing of your trip to France.

In any event, Symbol is willing to agree to a short extension of time for Intermec to provide the documents and the interrogatory responses discussed above as follows:

(1) July 8 -- fully answer the interrogatories;

(2) July 8 -- commence document production and produce source code; and

(3) July 15 -- complete all production.

Let us know today if Intermec will commit to providing discovery in this timetable or Symbol will have no choice but to ask the Court to compel Intermec's immediate compliance with its outstanding discovery obligations.

Sincerely,

Lawrence Brocchini /rb

Lawrence Brocchini

cc:  Shane Brunner, Esq.
     Eugenia C. Carter, Esq.