**MORRISON | FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE:202.887.1500
FACSIMILE:202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

June 30, 2005

CBI _05-380_

Writer's Direct Contact
212/468-8146
RRadding@mofo.com

RECEIVED
2005 JUN 30 AM 9:10
OFC OF THE SECRETARY
US INT'L TRADE COMM'N

*By Hand Delivery*

2434

Office of the
Secretary
Int'l Trade Commission

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street, SW, Room 317
Washington, D.C. 20436

Re:     Transmittal of Complaint Under 19 U.S.C. § 1337
        *In the Matter of Certain Hand-Held Mobile Computing Devices, Components Thereof*
        *and Cradles Therefor, Inv. No. 337-TA-___*

Dear Secretary Abbott:

Enclosed please find a Complaint under Section 337 on behalf of the Complainant Intermec Technologies Corporation alleging the unlawful sale for importation into the United States, importation into the United States, and the sale within the United States after importation of certain hand held mobile computing devices, components thereof and cradles therefor that infringe claims of the Complainant's valid and enforceable U.S. Patent No. 5,410,141 (the "'141 patent"), U.S. Patent No. 5,468,947 (the "'947 patent"), and U.S. Patent No. 6,375,344 (the "'344 patent"). In support of the Complaint, enclosed are the following:

1.     an original and twelve (12) copies of the Complaint with the signed Verification (original and one copy unbound, without tabs)(Rules 201.6(c), 210.4(f)(3)(i) and 210.8(a));

2.     an original and six (6) copies of the accompanying confidential and non-confidential exhibits with the confidential exhibits (Exhibit 30) segregated from the non-confidential exhibits (Exhibits 1 - 29 and 31 - 47)(original and one copy of each unbound, without tabs)(Rules 201.6(c), 210.4(f)(3)(i) and 210.8(a));

3.     two (2) copies of the Complaint, confidential and non-confidential exhibits, and confidential and non-confidential appendices for service upon the proposed respondents. (Rules 210(4)(f)(3)(i), 210.8(a), and 210.11(a));

dc-419299

**MORRISON | FOERSTER**

Hon. Marilyn R. Abbott
June 30, 2005
Page Two

4.    one (1) additional copy of the Complaint and accompanying non-confidential exhibits for service upon the government of Mexico;

5.    certified copies of the '141, '947, and '344 patents (attached as Exhibits 2, 4 and 6 respectively) (Rule 210.12(a)(9)(i));

6.    certified copies of the assignments for the '141 patent (attached as Exhibit 3) (Rule 210.12(a)(9)(ii));

7.    certified copies of the assignments for the '947 patent (attached as Exhibit 5) (Rule 210.12(a)(9)(ii));

8.    certified copies of the assignments for the '344 patent (attached as Exhibit 7) (Rule 210.12(a)(9)(ii));

9.    one certified and one unbound copy of the prosecution history of the '141 patent, attached as Appendix A (Rule 210.12(c)(2)).  Pursuant to the consent of the Office of Unfair Import Investigations ("OUII") and in light of the voluminous nature of the prosecution histories of the '141, '947 and '344 patents, we are submitting one bound and one unbound hardcopy of the prosecution histories together with three (3) CDs containing the prosecution history for each of the patents-in-suit.

10.   one certified and one unbound copy of the prosecution history of the '947 patent, attached as Appendix B (Rule 210.12(c)(2)).  Per the note in item number 9 above, also included are three (3) CDs which contain the '947 prosecution history.

11.   one certified and one unbound copy of the prosecution history of the '344 patent, attached as Appendix C (Rule 210.12(c)(2)).  Per the note in item number 9 above, also included are three (3) CDs which contain the '344 prosecution history.

12.   four (4) copies of each patent or technical reference mentioned in the prosecution history of the '141, '947, and '344 patents, attached as Appendices D, E, and F respectively (Rule 210.12(c)(3));

13.   three copies of each license agreement under the '141 and '344 patents, attached as Confidential Appendix G (Rule 210.12(c)(1));

14.   a letter and certification pursuant to Commission Rules 201.6(b) and 210.5(d) requesting confidential treatment of Confidential Exhibit 30 and Confidential Appendix G.

**MORRISON | FOERSTER**

Hon. Marilyn R. Abbott
June 30, 2005
Page Three


Thank you for your assistance in this matter. Please do not hesitate to contact us if you have any questions.

Respectfully submitted,

Rory J. Radding

Counsel for Complainant
Intermec Technologies Corporation

Enclosures

cc:    G. Brian Busey, Esq.
       Carson P. Veach, Esq.

dc-419299

**MORRISON | FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE:202.887.1500
FACSIMILE:202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

June 30, 2005

Writer's Direct Contact
202/887-1504
GBusey@mofo.com

**By Hand Delivery**

The Honorable Marilyn R. Abbott
Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112A
Washington, D.C. 20436

Re:　　Transmittal of Complaint Under 19 U.S.C. § 1337
　　　*In the Matter of Certain Hand-Held Mobile Computing Devices, Components Thereof*
　　　*and Cradles Therefor, Inv. No. 337-TA-___*

Dear Secretary Abbott:

We are counsel for Intermec Technologies Corporation. In accordance with Commission Rule 201.6, Intermec requests confidential treatment of the information contained in Confidential Exhibit 30 and Confidential Appendix G to the Complaint.

The information for which confidential treatment is sought involves: proprietary and sensitive terms of licenses under US Patent Nos. 5,410,141 and 6,375,344 (Confidential Appendix G); and proprietary and sensitive financial data supporting evidence for a domestic industry in connection with the asserted patents (Confidential Exhibit 30).

The information described above qualifies as confidential business information pursuant to Rule 201.6(a)(1) in that:

　　　a)　it is not available to the public;

　　　b)　unauthorized disclosure of such information could cause substantial harm to the competitive positions of Intermec; and

　　　c)　the disclosure of such information could impair the Commission's ability to obtain information necessary to perform its statutory functions.

dc-419304

**MORRISON | FOERSTER**

Hon. Marilyn R. Abbott
June 30, 2005
Page Two

Sincerely,

G. Brian Busey

*Counsel to Intermec Technologies*
  *Corporation*

SUSBCRIBED and sworn to before me on
the ____ of June, 2005.

_____
Notary Public in and for the District of Columbia

MY COMMISSION EXPIRES
AUGUST 14, 2005

dc-419304

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

```
-------------------------------------------------------------x
                                            :
In the Matter of                            :
                                            :
CERTAIN HAND-HELD MOBILE COMPUTING          :     Investigation No. 337-TA-
DEVICES, COMPONENTS THEREOF AND             :
CRADLES THEREFOR                            :
                                            :
                                            :
                                            :
                                            :
                                            :
-------------------------------------------------------------x
```

## COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

Complainant:
Intermec Technologies Corporation
6001 36th Avenue West
Everett, WA 98203-1264
(425) 348-2600

Proposed Respondents:
Symbol Technologies, Inc.
Symbol Technologies - Corporate Headquarters
One Symbol Plaza
Holtsville, New York 11742-1300
(631) 738-2400

Symbol de Mexico, Sociedad de R.L. de C.V.
Avenida Industrial Rio San Juan Mz-99-L-4 Parque
Del Norte
Reynosa, Tamaulipas, Mexico

Counsel for Complainant
Rory J. Radding
Matthew M. D'Amore
William J. Kuhne
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

Of Counsel for Complainant
Carson P. Veach
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone: (312) 360-6000
Facsimile: (312) 360-6520

G. Brian Busey
John L. Kolakowski
Morrison & Foerster LLP
2000 Pennsylvania Ave., NW, Suite 5500
Washington, D.C. 20006-1888
Telephone: (202) 887-1500
Facsimile: (202) 887-0763

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................................1

II.    COMPLAINANT ..................................................................................................2

III.   PROPOSED RESPONDENTS ...............................................................................4

IV.    THE PATENTS-IN-SUIT ......................................................................................4

    A.   The '141 Patent ..............................................................................................4

        1.   Identification Of The Patent And Ownership By Intermec........................4

        2.   Non-Technical Description Of The Patented Invention............................5

        3.   Foreign Counterparts To The '141 Patent.................................................6

    B.   The '947 Patent ..............................................................................................6

        1.   Identification Of The Patent And Ownership By Intermec........................6

        2.   Non-Technical Description Of The Patented Invention............................7

        3.   Foreign Counterparts To The '947 Patent.................................................8

    C.   The '344 Patent ..............................................................................................8

        1.   Identification Of The Patent And Ownership By Intermec........................8

        2.   Non-Technical Description Of The Patented Invention............................8

        3.   Foreign Counterparts To The '344 Patent.................................................9

V.     THE PRODUCTS AT ISSUE ................................................................................9

    A.   The Intermec Mobile Computing Devices ..........................................................11

        1.   The CK30 and CK31..............................................................................11

        2.   The CN30 and CN2................................................................................12

        3.   The Intermec 5023 and 6220..................................................................13

    B.   The Symbol Mobile Computing Devices ...........................................................14

        1.   The MC50..............................................................................................15

        2.   The MC9000..........................................................................................15

        3.   Additional Symbol Devices ...................................................................16

VI.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE .........................17

    A.   Respondents' Public Statements Concerning Their Foreign Manufacturing
        Activities...........................................................................................................17

    B.   Instances of Importation and Sale by Respondents .............................................18

    B.   Harmonized Tariff Schedule Information ...........................................................19

-i-

**TABLE OF CONTENTS**
(continued)

Page

VII.  RESPONDENTS' UNFAIR ACTS ............................................................................19
    A.    The '141 Patent .......................................................................19
    B.    The '947 Patent .......................................................................20
    C.    The '344 Patent .......................................................................21
    D.    Indirect Infringement ............................................................22
        1.    Symbol's Knowledge of the Patents-in-Suit.............................22
        2.    Symbol's Inducement of Infringement ...................................23
        3.    Symbol's Contributory Infringement .....................................23
    E.    Additional Infringing Products ...........................................24
VIII.  THE DOMESTIC INDUSTRY .............................................................................24
    A.    Economic Investment Directed to the Patents-in-Suit ...........................25
        1.    Investment in Plants and Equipment ........................................25
        2.    Investment in Labor .............................................................25
        3.    Investment in Research and Development ................................25
    B.    Technical Use of the Inventions of the Patents-in-Suit .......................26
IX.  LICENSES ........................................................................................................27
X.  RELATED LITIGATION ...................................................................................27
XI.  RELIEF REQUESTED .......................................................................................28

## I.  INTRODUCTION

1.1  Complainant Intermec Technologies Corporation ("Intermec" or "Complainant") requests that the United States International Trade Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337").  The proposed Respondents are Symbol Technologies, Inc. and Symbol de Mexico, Sociedad de R.L. de C.V. (collectively, "Symbol" or "Respondents").

1.2  Symbol's unfair acts include the unlicensed importation, sale for importation and/or sale after importation of certain mobile computing devices, components thereof and cradles therefor.  Generally speaking, the mobile computing devices at issue are hand-held, battery operated, data capture devices that provide a means for field and warehouse employees to collect data and communicate with separate computer devices.  Frequently, the mobile computing devices incorporate features such as a scanner or imager for reading bar codes, and various wired and wireless communication means for transmitting the bar code data to separate computer devices.  Intermec has historically been a leading innovator in the field of mobile computers and bar code scanners; its wholly-owned subsidiary, Intermec IP Corp. ("Intermec IP"), holds over 250 key patents in these areas.

1.3  As set forth in detail herein, certain Symbol mobile computing devices, components thereof and cradles therefor are covered by and infringe one or more claims of Intermec's U.S. Patent Nos. 5,410,141 (the "'141 patent"); 5,468,947 (the "'947 patent"); and 6,375,344 (the "'344 patent") (collectively, the "Patents-in-Suit").  Upon information and belief, Symbol unlawfully imports into the United States, sells for importation, and/or sells within the United States after importation, articles and systems that infringe the Patents-in-Suit, and accordingly has engaged in violations of Section 337.

1.4    An industry exists in the United States in connection with Intermec's activities relating to the manufacture, research and development, and engineering of mobile computing technology covered by the Patents-in-Suit. This industry is protected by the Patents-in-Suit as required by Section 337(a)(2) and (3). Intermec owns the entire right, title and interest in and to each of the Patents-in-Suit by assignment from Intermec IP.

1.5    Intermec requests that, after an investigation, the Commission issue (a) a limited exclusion order pursuant to Section 337(d) prohibiting the entry into the United States of all of Symbol's imported mobile computing devices, components thereof and cradles therefor that are covered by one or more claims of the Patents-in-Suit; and (b) a cease and desist order pursuant to Section 337(f) directed to Symbol to halt Symbol from importing, offering for sale, marketing, advertising, demonstrating, warehousing, distributing, selling and/or using such imported products in the United States.

## II.    COMPLAINANT

2.1    Intermec, a wholly-owned subsidiary of UNOVA, Inc. ("UNOVA"), is a Washington corporation with its principal place of business at 6001 36th Avenue West, Everett, Washington 98203-1264. UNOVA is an industrial technologies company also headquartered in Everett, Washington, and is publicly traded on the New York Stock Exchange.

2.2    Long a leader in data collection hardware and software, in 1997 Intermec was combined with Norand Corporation (of Cedar Rapids, Iowa) and United Barcode Industries (of Sweden) to form today's Intermec. Intermec and its predecessor companies introduced, among other things, the first hand-held order-entry terminal in 1969, the first portable bar code scanner in 1971. In 1974, Intermec invented CODE 39, which remains the most widely used alphanumeric bar code symbology in the world. Intermec and its predecessors are also credited with such breakthroughs as "Smart Battery" technology, digital cameras to be used as automated

2

data capture devices, and bar code scanners for cell phone and personal data assistant ("PDA")

applications. Intermec's history of innovation is memorialized in the over 560 patents it and its

wholly-owned subsidiary, Intermec IP, now hold. Intermec continues to be at the forefront of

development in mobile computing systems, wireless data communications networks, and

scanning technologies.

      2.3    One of Intermec's key lines of business is the development, manufacture and sale

of mobile computing devices and systems. These devices and systems are employed by

customers in fields such as retail, healthcare, logistics, manufacturing and field service to

improve productivity, quality and responsiveness of business operations. Their myriad uses

range from supply chain management, warehouse management and enterprise resource planning

to field sales and service. Intermec's customers include the United States Department of the

Army, which in June 2004 awarded Intermec a prime contract to provide mobile computing and

automatic identification systems, wireless networking technologies and services for global

logistics.

      2.4    To maintain its leadership position in the industry, Intermec has made significant

investments in the design, development, engineering and manufacture of mobile computers

protected by the Patents-in-Suit. (*See* **Exhibit 1**.)[1] Earlier this year Intermec introduced a new

mobile computing device, the CN30, which implements, among other technologies, the invention

of two of the three Patents-in-Suit. As shown below, additional Intermec products practice the

Patents-in-Suit as well. Intermec's consistent innovation, supported by its extensive patent

portfolio, has been important to the growth of its business, remains important to its continued

success and provides Intermec with a competitive advantage.

---

[1] **Exhibit 1**, attached hereto, is UNOVA's 2004 Report to Shareholders, which includes its Form 10-K for the fiscal year ended December 31, 2004. In 2004, UNOVA discontinued the operations of its industrial automation systems subsidiary. As a result, the financial information set forth in UNOVA's 10-K pertains primarily to Intermec.

## III.   PROPOSED RESPONDENTS

3.1     Respondent Symbol Technologies, Inc. is a Delaware corporation with its principal place of business at One Symbol Plaza, Holtsville, New York 11742-1300. Upon information and belief, Symbol Technologies, Inc. unlawfully imports infringing mobile computing devices, components thereof and cradles therefor into the United States and sells them in the United States, or sells them outside of the United States for importation into the United States.

3.2     Upon information and belief, Respondent Symbol de Mexico, Sociedad de R.L. de C.V., is a Mexican corporation with its principal place of business at Avenida Industrial Rio San Juan Mz-99-L-4, Parque Del Norte, Reynosa, Tamaulipas, Mexico ("Symbol Mexico"), and is a wholly-owned subsidiary of Symbol Technologies, Inc. Upon information and belief, Symbol Mexico manufactures and assembles infringing mobile computing devices, components thereof and cradles therefor for importation into the United States.

## IV.   THE PATENTS-IN-SUIT

### A.   The '141 Patent

#### 1.   Identification Of The Patent And Ownership By Intermec

4.1     U.S. Patent No. 5,410,141, "Hand-Held Data Capture System With Interchangeable Modules," issued to Steven E. Koenck, Arvin D. Danielson, Ronald L. Mahany, Dennis A. Durbin, Keith K. Cargin, George E. Hanson, Darald R. Schultz, Robert G. Geers, Darrell L. Boatwright, William T. Gibbs and Stephen J. Kelly on April 25, 1995. The '141 patent was assigned to Intermec on May 6, 2005. A certified copy of the '141 patent is attached hereto as **Exhibit 2**, and a certified copy of its assignment history is attached hereto as **Exhibit 3**.

4

4.2    Pursuant to Commission Rule 210.12(c), this Complaint is accompanied by a certified copy and four additional copies of the prosecution history of the '141 patent, and four copies of each reference mentioned in the prosecution history.

### 2.    Non-Technical Description Of The Patented Invention

4.3    The '141 patent relates to a hand-held mobile computing device for capturing and transmitting data such as bar codes. According to the teachings of the '141 patent, the hand-held device is comprised of one or more modules that can be removed and replaced. Furthermore, the preferred embodiment is designed so that the user can access the user interface of the device while simultaneously scanning an external bar code.

4.4    The inventors of the '141 patent are Steven E. Koenck, Phillip Miller, Arvin D. Danielson, Ronald L. Mahany, Dennis A. Durbin, Keith K. Cargin, George E. Hanson, Darald R. Schultz, Robert G. Geers, Darrell L. Boatwright, William T. Gibbs, and Stephen J. Kelly. These inventors met the need for a light-weight, low-cost, portable data terminal that can receive and transmit data in various forms by designing a modular data capture system that can be held in one hand during use.

4.5    In one embodiment of the invention, the terminal may include one of several user interface modules, each of which may provide different arrangements and keys. In this fashion, a user can stock different user interface modules for different applications, rather than purchasing a different device for each application. Alternatively, a user can easily replace the user interface module with an identical one (for example, after extended use), without replacing the remainder of the terminal.

4.6    According to the teachings of the invention, the modular data capture device should be capable of being held and supported in one hand during use, and designed so that the user can access the user interface while simultaneously capturing data using an optical reader.

5

The invention as disclosed may operate with a variety of data scanning means. The scanners preferred for use in the device are those that can scan a complete bar code essentially instantaneously, and include, for example, a laser scanner and a 2D imager, among other possible technologies. A number of physical configurations are within the scope of the invention.

### 3.    Foreign Counterparts To The '141 Patent

4.7    The following is a list of foreign counterparts to the '141 patent:

| Jurisdiction | App. No. | Filing Date | Status |
|---|---|---|---|
| PCT | WO9016033A1 | June 7, 1990 | Not Applicable |
| Spain | ES2210223T3 | June 7, 1990 | Pending |
| Europe | EP0667019(A1/B1) | June 7, 1990 | Pending |
| Denmark | DK0667019T3 | June 7, 1990 | Pending |
| Germany | DE69034101C0 | June 7, 1990 | Pending |
| Canada | CA2020357AA | June 7, 1990 | Abandoned |
| Canada | CA2018154AA | June 4, 1990 | Abandoned |
| Austria | AT0250247E | June 7, 1990 | Pending |
| Australia | AU5856390A1 | June 7, 1990 | Issued – AU654109 |

4.8    To the best of Intermec's present knowledge, information, and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn or rejected corresponding to the '141 patent.[2]

### B.    The '947 Patent

### 1.    Identification Of The Patent And Ownership By Intermec

4.9    U.S. Patent No. 5,468,947, "Pocket Size Data Capture Unit With Processor And Shell Modules," issued on November 21, 1995, to Arvin D. Danielson and Dennis A. Durbin. The '947 patent was assigned to Intermec on May 6, 2005. A certified copy of the '947 patent is

---

[2] The list includes those foreign counterparts to the application that issued as the '141 patent (Serial No. 07/777,393), of which Intermec is aware. It does not include counterparts to applications that otherwise appear in the history of the '141 patent. Additionally, Intermec may not be the owner of some or all of the counterparts to the '141 patent. Intermec is still investigating the existence and status of the foreign counterparts and will provide additional information, if necessary.

attached hereto as **Exhibit 4**, and a certified copy of its assignment history is attached hereto as **Exhibit 5**.

      4.10    Pursuant to Commission Rule 210.12(c), this Complaint is accompanied by a certified copy and four additional copies of the prosecution history of the '947 patent, and four copies of each reference mentioned in the prosecution history.

**2.**    **Non-Technical Description Of The Patented Invention**

      4.11    The '947 patent relates to a hand-held, pocket-sized mobile computing device that can be used in conjunction with peripheral devices.

      4.12    The inventors of the '947 patent, Arvin D. Danielson and Dennis A. Durbin, solved the problem of providing a compact and efficient system for data capture while achieving low production cost through the inventions of the '947 patent. They did so by disclosing a hand-held, pocket-sized computer processing module that can be used with a variety of peripheral devices, which add functionality to the computer.

      4.13    The '947 patent discloses a hand-held, pocket-sized mobile computing device that can be used with peripheral devices. Such peripheral devices may include hardware, software or both, and enable the execution of an auxiliary function. For example, peripheral devices may provide to the hand-held, pocket-sized computing device the ability to accept and read a smart card; to receive and synthesize spoken words; to print; or to communicate with other data processing devices in the absence of a hardwired connection.

      4.14    The '947 patent further discloses a hand-held, pocket-sized mobile computing device that has the ability to receive, process, store and display data to the user. The hand-held, pocket-sized computing device may also include, for example, an optical reader that permits the entry of optical information, such as bar codes; the ability to register the path of movement of a stylus over its display screen; and the ability to record and display handwritten characters.

7

### 3.    Foreign Counterparts To The '947 Patent

4.15    To the best of Intermec's present knowledge, information and belief, there are no foreign patents or foreign patent applications pending, filed, abandoned, withdrawn, or rejected corresponding to the '947 patent.[3]

### C.    The '344 Patent

#### 1.    Identification Of The Patent And Ownership By Intermec

4.16    U.S. Patent No. 6,375,344, "Data Capture System With Communicating And Recharging Docking Apparatus And Hand-Held Data Terminal Means Cooperable Therewith," issued on April 23, 2002, to George E. Hanson and Keith K. Cargin, Jr. The '344 patent was assigned to Intermec on May 6, 2005. A certified copy of the '344 patent is attached hereto as **Exhibit 6**, and a certified copy of its assignment history is attached hereto as **Exhibit 7**.

4.17    Pursuant to Commission Rule 210.12(c), this Complaint is accompanied by a certified copy and four additional copies of the prosecution history of the '344 patent, and four copies of each reference mentioned in the prosecution history.

#### 2.    Non-Technical Description Of The Patented Invention

4.18    The '344 patent pertains to a hand-held, mobile computing device and cradle for use therewith. The cradle is designed to receive and hold the mobile computer. All of the patent's claims are drawn to the hand-held device and the cradle.

4.19    Specifically, the '344 patent discloses a hand-held mobile computing device that has electrical contact pads, generally flush with its exterior face, which interface with electrical contacts of the cradle. Because the contact pads of the mobile computing device are generally flush with the device's exterior surface, the device receptacle need not substantially penetrate the

---

[3] The statement of paragraph 4.15 refers to foreign counterparts to the application that issued as the '947 patent (Serial No. 08/040,313). It does not include counterparts to applications that otherwise appear in the history of the '947 patent. Intermec is still investigating the existence and status of foreign counterparts, if any, and will provide additional information, if necessary.

mobile computer to establish a connection.  The cradle is designed according to the teachings of the invention to ensure that the device's contact pads engage with the electrical contacts of the cradle.

4.20    In one embodiment of the invention, the mobile computing device's battery is recharged when the mobile computing device is secured in the cradle.

4.21    In a second embodiment of the invention, in addition to allowing for the recharging of the mobile computing device's battery, securing the device in the cradle permits the interchange of data between the mobile computing device and the cradle.

### 3.    Foreign Counterparts To The '344 Patent

4.22    The following is a list of foreign counterparts to the '344 patent:

| Jurisdiction | App. No. | Filing Date | Status |
|---|---|---|---|
| Canada | CA1340933A1 | September 29, 1989 | Issued on March 21, 2000 |
| Canada | CA1340450A1 | September 28, 1989 | Issued on March 16, 1999 |
| Canada | CA1340400A1 | September 29, 1989 | Issued on February 16, 1999 |
| Canada | CA2022976AA | August 9, 1990 | Abandoned |

4.23    To the best of Intermec's present knowledge, information and belief, there are no other foreign patents or foreign patent applications pending, filed, abandoned, withdrawn or rejected corresponding to the '344 patent.[4]

## V.    THE PRODUCTS AT ISSUE

5.1    The products at issue in this investigation are certain mobile computing devices, components thereof and cradles therefor.  The mobile computing devices are hand-held and

---

[4] The list includes foreign counterparts to the application that issued as the '344 patent (Serial No. 08/647,477).  It does not include counterparts to applications that otherwise appear in the history of the '344 patent.  Additionally, Intermec may not be the owner of some or all of the counterparts to the '344 patent.  Intermec is still investigating the existence and status of the foreign counterparts and will provide additional information, if necessary.

battery operated. They provide means for field and warehouse employees to collect data and communicate with separate computing devices.[5]

5.2    The mobile computers at issue typically have a graphical display, which may or may not have a touch screen for data input. They further provide the user with a keyboard interface, frequently in one of a number of alphanumeric formats or alternatively with keys for navigating the graphical display. They typically will have one or more types of optical scanners for reading, *inter alia*, bar code information. To transmit data they collect, they employ one of a number of wireless communications technologies, from short-range "Bluetooth," to medium-range wireless local area network standards, to long-range connectivity. They may also send and receive data over a wired connection, typically while docked in a cradle, which may also serve as a charging receptacle for a unit's rechargeable battery.

5.3    An exemplary use of such mobile computing devices is in the shipping, tracking and delivery of packages sent via common carrier. Packages dropped off for delivery at a carrier are pre-labeled with readable bar code indicia and scanned with hand-held computers upon receipt by the carrier. The captured data is then transmitted wirelessly to a central server for tracking. As the package travels through various means of transportation, it is scanned upon loading and unloading, with data again transmitted to a central location. The final delivery person may receive directions, routing information, or other address and location information wirelessly in order to complete delivery efficiently. At the point of delivery, the delivery person can interact with the recipient to receive and transmit a signature via the device touch screen, and communicate to a mobile printer to deliver an invoice. Other uses include supply chain management and inventory control.

---

[5] It has not been practicable for Intermec to provide samples of the accused and domestic industry devices referenced herein. (Rule 210.12(b).) Samples of each of the products referenced in the complaint will be made available for inspection upon request.

### A.    The Intermec Mobile Computing Devices

5.4    Intermec develops, manufactures and sells numerous products covered by one or more of the Patents-in-Suit. These products, including the CK30, CK31, CN30, CN2, 5023 and 6220 mobile computers discussed below, were all developed, in whole or in large part, at Intermec's U.S. facilities and, with the exception of the CN30, are all assembled in the United States.

### 1.    The CK30 and CK31

5.5    The CK30 is a customizable hand-held mobile computing device offering users a variety of keypad, display and scanner choices, as well as several options for wireless connectivity. Keypads and batteries can be modularly replaced and exchanged with a minimum of effort. The CK30 can be held in either hand, with scanning functions that may be operated by a central button reachable from either side. It alternatively offers an attachable "pistol grip" handle for further comfort for scanning-intensive operations. Intermec recently released the CK31, built along the same lines as the CK30 but with a larger display. Both models are shown below.



5.6    Further details concerning the CK30 are provided in paragraph 8.7 and in **Exhibits 31 to 34.**

11

### 2.    The CN30 and CN2

5.7    The CN30 and CN2 are two of Intermec's newest offerings, announced in January 2005. These products have reached the final stages of development, with a limited number of each device having been sold and shipped to date. Intermec is taking orders for these devices, with delivery expected later this year.

5.8    The CN30, a portable, compact device that can be carried on a belt holster or in a shirt pocket, offers users optimum flexibility to exchange between pen-based and keypad-based computing. The customer and its employees can exchange between different interfaces and form-factors based on application, user preference, or other factors. In addition, like the CK30, the device offers a variety of scanning and wireless communication options, as well as an optional "pistol-grip" handle. An image of the CN30 is shown below.



5.9    The CN2 is a pocket-sized mobile computing device that provides mobile workers with a rugged and reliable mobile computing data capture device. The CN2 is particularly well-

12

suited for in-store retail applications, such as price verification, shelf pricing, receiving and cycle-counting, as well as size-sensitive, light-industrial operations, such as shipping and inventory management. An image of the CN2 is shown below.



5.10    Further details concerning the CN30 and CN2 are provided in paragraphs 8.8 and 8.9 and in **Exhibits 35 to 43.**

### 3.    The Intermec 5023 and 6220

5.11    The Intermec 5023 Keypad Hand-Held Computer is a highly versatile data collection terminal. Based on the Microsoft Windows CE operating systems, it supports multiple programming environments. It includes an integrated laser bar code scanner, and can be further expanded using its interfaces for PC-Card or Compact Flash card. The 5023 features an infrared interface to its charging cradle, while the battery is recharged through flush wall contacts on an end wall of the device. An image of the 5023 is shown below.



13

5.12     The Intermec 6220 Keypad Hand-Held Computer is a high function mobile computer. Running the same Intel processor used on many desktop computers, the 6220 also includes PC-Card slots for additional expansion. It is environmentally sealed for use in the field, and offers two keypad options depending on the desired application. An image of the 6220 is shown below.



5.13     Further details concerning the Intermec 5023 and 6220 are provided in paragraphs 8.11 and 8.12 in **Exhibits 44 to 47.**

**B.     The Symbol Mobile Computing Devices[6]**

5.14     Symbol imports and sells mobile computing devices, including the MC50 series and MC9000 series, which are manufactured in China and Mexico, respectively, and imported into and sold in the United States.

---

[6] All allegations in this section are made on information and belief, based on information available on Symbol's website (www.symbol.com) and on physical samples of the products at issue.

### 1.    The MC50

5.15    The MC50 is a pocket-sized, PDA-like mobile computer, available with either a navigation keypad or a QWERTY keypad. The MC50 offers several imaging options, including a linear scanner, 2D imager, or digital camera. The MC50 can be received by a variety of cradles for recharging and data exchange, receiving power through contacts substantially flush with the bottom of the device.

5.16    An image of two configurations of the MC50 is shown below.



5.17    The MC50 is discussed further in paragraphs 7.6 to 7.10 and paragraphs 7.12, 7.13, 7.14, 7.16, and 7.19 below, and in **Exhibits 20 to 23** and **Exhibits 27 to 29.**

### 2.    The MC9000

5.18    The MC9000 likewise comes in multiple configurations. The MC9000 series, including models designated by Symbol as the MC9000K, MC9000S, and MC9000G, are hand-held devices for heavier uses. These devices offer either a laser bar code scanner or 2D optical imager, several wireless connectivity options, and modular keypads. They each offer a choice of modular, field-replaceable keypads for different applications. All three devices also operate with a variety of cradles that hold them in place for recharging, receiving power from the cradles through contacts substantially flush with the bottom of the device.

15

5.19    Images of the MC9000 in a variety of configurations (including inserted in cradles) are shown below.



5.20    The MC9000 is discussed further in paragraphs 7.1 to 7.5 and paragraphs 7.11, 7.13, 7.14, 7.15, and 7.18 below, and in **Exhibits 15 to 19** and **Exhibits 24 to 26.**

### 3.    Additional Symbol Devices

5.21    Symbol makes several additional devices.  For example, Symbol sells the PPT8800, a "Pocket PC"-style device with a large touch screen and an integrated bar code reader.  Images of two models of the PPT8800, as shown on www.symbol.com, are shown below.

 

16

## VI.   SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

### A.   Respondents' Public Statements Concerning Their Foreign Manufacturing Activities

6.1   On information and belief, Symbol has made public statements concerning its manufacturing activities abroad.

6.2   Symbol's 2004 Annual Report (attached as **Exhibit 8** hereto) informed Symbol's shareholders that "[o]ur products are principally manufactured at our Reynosa, Mexico facility." (*See* **Exhibit 8** at 35.)

6.3   Symbol's Annual Report further informs shareholders that Symbol "rel[ies] on our manufacturing facility in Reynosa, Mexico to manufacture a significant portion of our products." (*Id.* at 46.) According to this report, 40% of the products manufactured at the Mexico facility are Symbol mobile computers. (*Id.*)

6.4   Symbol's Annual Report also notes that "[c]ertain of our products are manufactured by third parties, most of which are outside the United States." (*Id.* at 35).

6.5   Further, on information and belief, Symbol's Chief Financial Officer reported during a public conference on May 11, 2005, that Symbol's manufacturing activities are "essentially done down in Mexico."

17

**B.    Instances of Importation and Sale by Respondents**

6.6    On information and belief, the MC50 and MC9000 are manufactured abroad and imported and sold in the United States, through, among other sources, sales offices across the country[7] as well as authorized retailers and resellers.

6.7    In June 2005, several of the Symbol products at issue were purchased from Peak Technologies, located in Hasbrouck Heights, New Jersey. Among the products purchased were: (a) an MC50 device, (b) a single-slot cradle for use with the MC50; (c) an MC9000 device; and (d) a single-slot cradle for use with the MC9000. Documentation for these purchases is attached at **Exhibit 10**. A packing list included with the purchased products is attached at **Exhibit 11**.

6.8    Upon information and belief, Peak Technologies is an authorized retailer and reseller in the United States of Symbol products including the products at issue. (Relevant pages from the Peak Technologies' website are attached hereto as **Exhibit 12**.) A search for Peak Technologies under a link entitled "How to Buy" on Symbol's website reveals that Peak Technologies is a "Premier Business Partner" of Symbol. (Relevant pages from Symbol's website are attached hereto as **Exhibit 13**.)

6.9    The markings on the purchased MC50 and the single-slot cradle for use therewith show that these devices were "Made in China." (Photographs of various Symbol devices showing designation of origin are attached hereto as **Exhibit 14**.)

6.10    The markings on the purchased MC9000 and the single-slot cradle for use therewith show that these devices were "Made in Mexico." (*See id.*)

---

[7] For example, relevant pages from Symbol's website (attached hereto as **Exhibit 9**) indicate that Symbol has sales offices in Arizona, Arkansas, California, Florida, Georgia, Virginia, Illinois, Kansas, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas and Washington.

6.11    Further discovery will likely reveal other specific acts of proposed Respondents' importation, sale for importation, and sale after importation of mobile computing devices, components thereof and cradles therefor that infringe the Patents-in-Suit, including the MC9000 and MC50.

**B.    Harmonized Tariff Schedule Information**

6.12    The subject products of the proposed Respondents are believed to fall within at least the following classifications of the Harmonized Tariff Schedules ("HTS") of the United States: 8473.30.000 (computers/portable light ADP (automatic data processing), weight not more than 10 kilograms). This HTS number is intended to be for illustration only and is not intended to be restrictive of the products accused.

**VII.    RESPONDENTS' UNFAIR ACTS**

**A.    The '141 Patent**

7.1    Upon information and belief, one or more Symbol products infringe claims of the '141 patent. As a specific example, Intermec is informed and believes that the mobile computing devices and components thereof imported by Symbol and sold under the series designation "MC9000" infringe at least claims 62, 66, 67, 71, 126, and 130-133 of the '141 patent.

7.2    Upon information and belief, Symbol's MC9000 mobile computers are manufactured outside of the United States, including but not limited to assembly at Symbol Mexico (a proposed Respondent herein), and imported into the United States. (*See* **Exhibits 8-14.**)

7.3    Upon information and belief, after importation, the mobile computing devices and components thereof designed and manufactured by Symbol and having the series designation "MC9000" are sold in the United States by both Symbol and third-party distributors acting on Symbol's behalf. (*See* **Exhibits 8-14.**)

19

7.4    The aforesaid acts of Symbol constitute acts of infringement.

7.5    A claim chart demonstrating that Symbol's MC9000 mobile computing devices and components thereof infringe exemplary claim 62 of the '141 patent is attached hereto as **Exhibit 15**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 16**. The Symbol documents referred to in this claim chart are attached hereto as **Exhibits 17-19**.

**B.    The '947 Patent**

7.6    Upon information and belief, one or more Symbol products infringe claims of the '947 patent. As a specific example, Intermec is informed and believes that Symbol's hand-held, pocket-sized mobile computers imported and sold under the series designation "MC50" infringe at least claims 1, 2 and 3 of the '947 patent.

7.7    Upon information and belief, Symbol's MC50 is manufactured outside of the United States, including but not limited to manufacture in China (*see* **Exhibit 14**), and imported into the United States (*see* **Exhibits 8-14**).

7.8    On information and belief, after importation, Symbol's hand-held, pocket-sized mobile computers, including the MC50, are sold in the United States by both Symbol and third-party distributors acting on Symbol's behalf.  (*See id.*)

7.9    The aforesaid acts of Symbol constitute acts of infringement.

7.10    A claim chart demonstrating that the MC50 mobile computing device and components thereof infringe exemplary claim 1 of the '947 patent accompanies this Complaint as **Exhibit 20**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 21**. The documents referred to in this claim chart are attached as **Exhibits 22-23**.

20

### C.    The '344 Patent

7.11    Upon information and belief, one or more Symbol products infringe claims of the '344 patent.  As a specific example, Intermec is informed and believes that the mobile computing devices and components thereof imported by Symbol and sold under the series designation "MC9000" and the cradles imported and sold by Symbol for use with those mobile computing devices, including a single-slot serial/USB cradle, infringe at least claims 27-31 of the '344 patent.

7.12    As a further specific example, Intermec is informed and believes that mobile computers and components thereof imported by Symbol and sold under the series designation "MC50" and the cradles imported and sold by Symbol for use with those mobile computing devices, including a single-slot USB cradle, infringe at least claims 17-25 and 27-31 of the '344 patent.

7.13    Upon information and belief, Symbol mobile computing devices having the designations "MC9000" and "MC50" are manufactured outside of the United States, imported into the United States, and then sold in the United States.  (*See* **Exhibits 8-14**.)

7.14    On information and belief, cradles sold by Symbol for use with the Symbol mobile computing devices having the series designations "MC9000" and "MC50" are manufactured outside of the United States, imported into the United States and then sold in the United States.  (*See id.*)

7.15    For example, on information and belief, the single-slot serial/USB cradles sold for use with the MC9000 are manufactured outside of the United States, including in Mexico (*see* **Exhibit 14**), and imported into the United States.

21

ny-635831

7.16    Similarly, on information and belief, the single-slot USB cradles sold for use with the MC50 are manufactured outside of the United States, including in China (*see* **Exhibit 14),** and imported into the United States.

7.17    The aforesaid acts of Symbol constitute acts of infringement.

7.18    A claim chart demonstrating that the MC9000 and single-slot serial/USB cradle for use with the MC9000 infringe exemplary claim 27 of the '344 patent accompanies this complaint as **Exhibit 24**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 25.** The documents referred to in this claim chart are attached hereto as **Exhibits 17, 18, and 26**.

7.19    A claim chart demonstrating that the MC50 and single-slot serial/USB cradle for use with the MC50 infringe exemplary claim 27 of the '344 patent accompanies this complaint as **Exhibit 27**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 28**. The documents referred to in this claim chart are attached hereto as **Exhibits 22, 23, and 29**.

   **D.**    **Indirect Infringement**

      **1.**    **Symbol's Knowledge of the Patents-in-Suit**

7.20    Upon information and belief, in view of the extensive litigation history between Symbol and Intermec, Symbol is aware or likely to be aware of one or more of the Patents-in-Suit, and aware or likely to be aware that the conduct recited herein constitutes direct and/or indirect infringement of one or more of such patents.

7.21    At least as of the date Symbol receives notice of this Complaint, Symbol will be aware of the Patents-in-Suit and of Intermec's claim that the conduct recited herein constitutes direct and/or indirect infringement of the Patents-in-Suit.

22

7.22    Upon information and belief, one or more Symbol products, including but not limited to the MC9000, MC50, and PPT8800 are being used by Symbol's customers in the United States in a manner that would infringe one or more of the Patents-in-Suit, and, for the reasons set forth above, Symbol is aware of such infringing use.

### 2.    Symbol's Inducement of Infringement

7.23    Upon information and belief, Symbol is actively inducing the direct infringement of one or more of the Patents-in-Suit by (a) making, importing, offering to sell, among other things, the MC9000 and MC50 mobile computers, components thereof and cradles therefor, and (b) by instructing others in the United States as to the use of such devices in a manner that would infringe the Patents-in-Suit.

### 3.    Symbol's Contributory Infringement

7.24    Upon information and belief, the mobile computers, components thereof and/or cradles therefor are a material part of the invention of one or more of the Patents-in-Suit, known by Symbol to be especially made or especially adapted for use in an infringement of one or more of such patents, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

7.25    As a specific example, Symbol is actively contributing to the direct infringement of at least claims 27-32 of the '344 patent by otherwise making, using and selling its MC9000 series of mobile computers, its MC50 series of mobile computers, and its cradles for use with those mobile computers.

7.26    Upon information and belief, the natural and intended use of the cradles that Symbol designs, makes, uses and sells for use with the MC9000 series of mobile computers and MC50 series of mobile computers is for such cradles to receive Symbol MC9000 and MC50 mobile computers, to enable the batteries in those mobile computers to be recharged and to

23

enable the exchange of data between such mobile computers and peripheral devices. Furthermore, the cradles that Symbol designs, makes, uses and sells for use with the MC9000 series of mobile computers and MC50 series of mobile computers are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

### E.    Additional Infringing Products

7.27    Upon information and belief, additional Symbol products may infringe one or more of the Patent-in-Suit. For example, upon information and belief, the Symbol PPT8800 may infringe at least claim 1 of the '947 patent. Intermec believes that it is likely that, after a reasonable opportunity for further investigation and discovery, it will be able to show that additional Symbol devices infringe one or more of the Patents-in-Suit under circumstances that would give rise to further violations of Section 337.

### VIII.  THE DOMESTIC INDUSTRY

8.1    An industry, as required by 19 U.S.C. § 1337(a)(2) and (3), exists in the United States relating to mobile computing systems made by Intermec and covered by the '141 patent, the '947 patent, and the '344 patent.

8.2    As set forth in more detail below, Intermec has substantial facilities in the United States for the research, development, and manufacturing of mobile computing devices, hand-held scanners, peripheral devices including printers, and other products, including those mobile computers, components thereof, and cradles therefor covered by the Patents-in-Suit. Exemplary models of such mobile computers include the CK30, CK31, CN30, CN2, 5023 and 6220 mobile computers, which were all developed, in whole or in large part, at Intermec's U.S. facilities and, with the exception of the CN30, are all assembled in the United States. Intermec's U.S. facilities also develop and manufacture other mobile computing devices.

24

### A.    Economic Investment Directed to the Patents-in-Suit

#### 1.    Investment in Plants and Equipment

8.3    Intermec has made a significant investment in plant and equipment in the United States relating to products that practice claims of the '141 patent, the '947 patent, and the '344 patent. Intermec's headquarters and its principal manufacturing and assembly facility are located in Everett, Washington. Accordingly, many of Intermec's products are manufactured, assembled, tested, and/or quality-checked at this facility, including those covered by the Patents-in-Suit. Intermec also operates facilities relating to aftermarket service for such products in Charlotte, North Carolina and Cedar Rapids, Iowa. Intermec's investment in building and equipment in these manufacturing and assembly facilities is detailed in **Confidential Exhibit 30.**

#### 2.    Investment in Labor

8.4    Intermec has made a significant investment in labor relating to mobile computing products that practice the claims of the Patents-in-Suit. Intermec and its subsidiaries employ over 2700 persons worldwide with over 1700 employees in the United States. The number of employees at its U.S. manufacturing and assembly facilities is detailed in **Confidential Exhibit 30.** Additionally, Intermec's costs for employees involved in the manufacture, assembly, testing and research and development of the products covered by the Patents-in-Suit for the three most recent fiscal years is reflected in **Confidential Exhibit 30.**

#### 3.    Investment in Research and Development

8.5    Intermec has made a substantial investment in research and development relating to products that practice the Patents-in-Suit. In addition to substantial research and development activities at its Everett, Washington headquarters, Intermec operates a large engineering facility in Cedar Rapids, Iowa, where the inventions of the Patents-in-Suit were developed. Intermec performs research and development pertaining, among other things, to mobile computing

products that practice claims of the Patents-in-Suit at these facilities. **Confidential Exhibit 30** details the R&D costs associated with numerous Intermec products that practice claims of the Patents-in-Suit.

8.6     Furthermore, Intermec employs a large number of engineers, many with B.S.E.E. degrees or advanced degrees in fields related to the Patents-in-Suit at its facilities, including its Cedar Rapids engineering center. These engineers develop and design Intermec products that exploit the Patents-in-Suit. **Confidential Exhibit 30** details further information regarding Intermec's substantial investment in R&D relating to the Patents-in-Suit.

**B.     Technical Use of the Inventions of the Patents-in-Suit**

8.7     Intermec's CK30 series of products practice at least claims 62, 66, 67, 71, 126 and 130-133 of the '141 patent. A claim chart applying claim 62 of the '141 patent to Intermec's CK30 is attached as **Exhibit 31**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 32**. Relevant pages of other documents cited in this claim chart are attached hereto as **Exhibits 33, 33A, and 34.**

8.8     Intermec's CN30 series of products practice at least claims 62-71, 91-95, 98, 100, 126, and 130-133 of the '141 patent. A claim chart applying claim 62 of the '141 patent to Intermec's CN30 is attached as **Exhibit 35**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 36.** Relevant pages of other documents cited in this claim chart are attached hereto as **Exhibits 37-39**.

8.9     Intermec's CN2 series of products practice at least claims 1-3 of the '947 patent. A claim chart applying claim 1 of the '947 patent to Intermec's CN2 is attached as **Exhibit 40**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 41**. Relevant pages of other documents cited in this claim chart are attached hereto as **Exhibits 42-43**.

8.10    Intermec's CN30 mobile computer also practices at least claims 1 and 3 of the '947 patent.

8.11    Intermec's 5020 series of products and the cradles for use therewith practice at least claims 17-20 of the '344 patent. A claim chart applying claim 17 of the '344 patent to Intermec's 5023 and a cradle therefor is attached as **Exhibit 44**. Annotated figures corresponding to this claim chart are attached hereto as **Exhibit 45**. Relevant pages of other documents cited in this claim chart are attached hereto as **Exhibits 46-47**.

8.12    Intermec has developed additional products within the scope of one or more of the Patents-in-Suit, including for example the 6220. The 6220 and cradle therefor practice, among other claims, at least claims 17-25, 27 and 29-31 of the '344 patent.

## IX.    LICENSES

9.1    UNOVA, Intermec and Intermec IP have granted a license under the '141 patent. The terms of that license grant are set forth in **Confidential Appendix G**.

9.2    UNOVA, Intermec and Intermec IP have granted a license under the '344 patent. The terms of that license grant are set forth in **Confidential Appendix G**.

9.3    To the best of Intermec's knowledge, information and belief, there are no other licenses to the Patents-in-Suit.

## X.    RELATED LITIGATION

10.1    The Patents-in-Suit have not been asserted in any other court or agency litigation.

10.2    Intermec and Symbol are involved in other pending litigation listed below. These other actions do not involve the Patents-in-Suit. As noted below, some of the pending actions involve the Symbol products that are the subject of this Complaint:

a)    *Intermec IP Corp. v. Symbol Technologies, Inc.*, Civil Action No. 04-357 (GMS) (D. Del.). On June 7, 2004, Intermec IP Corp. filed a complaint against Matrics Inc. for infringement of U.S. Patent Nos. 5,912,632, 5,528,222, 5,995,019 and 6,371,375, which

27

pertain to radio frequency identification technology. Symbol subsequently acquired all of the stock of Matrics Inc. and then merged Matrics Inc. into itself. Symbol was thereafter substituted into the action as the successor-in-interest to Matrics Inc. Symbol has asserted counterclaims alleging that the 5,912,632, 5,528,222, 5,995,019 and 6,371,375 patents are invalid and not infringed. Discovery in the action is ongoing.

      b)    *Symbol Technologies, Inc. v. Intermec Technologies Corp.*, Civil Action No. 05-147 (SLR) (D. Del.). On March 10, 2005, Symbol filed a complaint against Intermec in the District Court of Delaware alleging infringement of U.S. Patent Nos. 5,029,183, 5,479,441, 5,157,687 and 6,473,449. These patents pertain generally to a packet data communications protocol and system for wireless data transmission. Intermec filed an answer and asserted declaratory counterclaims of invalidity and non-infringement of these patents and counterclaims alleging infringement by Symbol of the following patents owned by Intermec: U.S. Patent Nos. 5,459,678, 5,568,645, 5,987,499, 5,892,971, 5,598,487, and 6,621,942. These patents pertain to a variety of systems for collecting data, including radio frequency data capture systems, data capture terminals with a handwritten data receiving component, and portable data processors with an indicia reader and a multitasking operating system. Symbol's MC9000 and MC50 are among the products that are alleged to infringe these patents. Discovery in the action is ongoing.

      c)    *Symbol Technologies, Inc. v. Intermec Technologies Corp.*, Civil Action No. 05-146 (GMS) (D. Del.). On March 10, 2005, concurrently with the action described above, Symbol filed a complaint against Intermec seeking a declaratory judgment that it was entitled to terminate a supply agreement between the parties. On March 23, 2005, Intermec filed counterclaims alleging that Symbol had materially breached the agreement at issue. Discovery in the action is ongoing.

      d)    *Symbol Technologies, Inc. v. Intermec Technologies Corp.*, Civil Action No. 05 C 0256 C (W.D. Wis.). This is an action brought by Symbol on April 28, 2005 for the alleged infringement of U.S. Patent Nos. 5,243,655 and 5,457,308. These patents pertain generally to certain techniques for decoding and interpreting bar codes. On May 18, 2005, Intermec answered the complaint and concurrently moved to transfer the case pursuant to 28 U.S.C. §1404(a) to the District Court of Delaware, where the actions described above are pending.

## XI.    RELIEF REQUESTED

    11.1   WHEREFORE, by reason of the foregoing, Complainant requests that the United

States International Trade Commission:

      a)    institute an immediate investigation pursuant to 19 U.S.C. § 1337(a)(1)(B)(i)

            and (b)(1) into the violations of those sections based on Symbol's unlawful

            importation into the United States, sale for importation into the United States,

and/or sale in the United States after importation of certain mobile computers,

components thereof and cradles therefor that infringe, directly, contributorily

or by inducement, one or more claims of U.S. Patent Nos. 5,410,141,

5,468,947 and 6,375,344;

b)    determine that there has been a violation of Section 337;

c)    issue an order pursuant to 19 U.S.C. § 1337(d), excluding from entry into the

United States all mobile computers, components thereof and cradles therefor

within the scope of the investigation instituted pursuant to this Complaint that

infringe, directly, contributorily or by inducement, one or more claims of U.S.

Patent Nos. 5,410,141, 5,468,947 and 6,375,344;

d)    issue a permanent order pursuant to 19 U.S.C. § 1337(f) directing Symbol to

cease and desist from importing, marketing, advertising, demonstrating,

warehousing, distributing, selling, offering to sell, and/or using mobile

computers that infringe one or more claims of the Patents-in-Suit; and

e)    grant such other and further relief as the Commission deems appropriate and

just under the law, based on the facts complained of herein and determined by

the investigation.

Dated: June 28, 2005

Respectfully submitted,

Rory J. Radding
Matthew M. D'Amore
William J. Kuhne
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY  10104-0050
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

and

G. Brian Busey
John L. Kolakowski
Morrison & Foerster LLP
2000 Pennsylvania Ave., NW, Suite 5500
Washington, D.C.  20006-1888
Telephone:  (202) 887-1500
Facsimile:  (202) 887-0763

*Counsel for Complainant*

Of Counsel
Carson P. Veach
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone:  (312) 360-6000
Facsimile:  (312) 360-6520

30

## VERIFICATION OF COMPLAINT

I, Timothy Breidenbaugh, am the Vice President and Corporate Controller for Intermec Technologies Corporation ("Intermec") and am duly authorized to execute the foregoing Complaint under Section 337 of the Tariff Act of 1930, as amended (the "Complaint") on behalf of Intermec. I have read the Complaint and am aware of its contents. In accordance with 19 C.F.R. §§ 210.4 and 210.12(a), I declare that the following statements are true:

1.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the allegations of this Complaint are well grounded in fact and have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

2.      To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the claims and other legal contentions set forth in the Complaint are warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law; and

3.      The Complaint is not being filed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of the investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 4/20/05                                By: _Timothy D. Breidenbaugh_
                                                 Timothy Breidenbaugh
                                                 Vice President & Corporate Controller
                                                 Intermec Technologies Corporation

ny-635831                          1