0 5 - 5 2 8

Document Number Case Number
025                05-C-0256-C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
07/13/2005 05:07:44 PM CDT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SYMBOL TECHNOLOGIES, INC.,

      Plaintiff,

v.

INTERMEC TECHNOLOGIES CORP.,

      Defendant.

05 C 0256 C

JURY TRIAL DEMANDED

D1 25

---

**DEFENDANT INTERMEC TECHNOLOGIES CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND IN OPPOSITION TO SYMBOL TECHNOLOGIES, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS**

---

### INTRODUCTION

This discovery dispute is not an issue of "excuses" or "delay" on defendant Intermec Technology Corporation's ("Intermec") part. Rather, this is an issue of plaintiff Symbol Technologies, Inc.'s ("Symbol") refusal to reasonably work with Intermec to proceed with discovery in this case in an orderly manner. (Declaration of Leland W. Hutchinson ("Hutchinson Decl."), *passim.*) Symbol misstates the facts and the record to benefit its position on this motion which only serves as a distraction from the effort to proceed to trial as scheduled. Viewing the events without Symbol's obfuscation, this is a situation where Intermec is working diligently to comply with its discovery obligations, but has been met with unreasonable and irrational demands from Symbol.

Intermec timely filed its responses and objections to Symbol's discovery requests. (Hutchinson Decl., ¶¶ 28, 35.) Within little over two weeks, and while Intermec understood that it was working with Symbol to negotiate the scope of and to provide

discovery, Symbol first proposed a knowingly unworkable production schedule (on the Friday before the July 4th weekend) and then – almost immediately – filed this Motion to Compel. (Hutchinson Decl., ¶¶ 36-55.)

Intermec has made every reasonable effort to respond to Symbol's expansive discovery requests, but has been left with no indication of which of its hundreds of products are at issue, or which of the many claims in Symbol's patents allegedly have been infringed. Working diligently since before this case was filed, Intermec has to date identified over 2 million pages of documents potentially responsive to discovery requests in all of the pending cases between Symbol and Intermec of its affiliates.

Symbol clearly seeks to move this later filed case to the head of the line, bypassing discovery in earlier filed cases with earlier cut-off dates. Such action is unwarranted. The parties need a sensible schedule for proceeding in all cases.[1]

This brief supports Intermec's motion for a protective order and opposes Symbol's motion to compel. First, Intermec requests that the Court restrict the scope of discovery to products that admittedly were not produced with original Symbol "scan engines" pursuant to an "OEM Agreement" with Symbol. Second, Intermec urges the Court to continue following *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066 (Fed. Cir. 2002), and require Symbol to provide Intermec with its analysis of the claim limitations in the patents-in-suit compared to Intermec's devices. Third, Intermec seeks a reasonable time in which to produce documents and complete responses to contention interrogatories. Finally, this brief responds to Symbol's motion to compel,

---

[1] Because the Intermec products apparently accused here are also accused in the patent action that Symbol has filed against Intermec in Delaware, it makes sense for Intermec to have searched for responsive documents in both cases at the same time.

which is premature, misplaced, and will be made largely moot if the Court grants Intermec's motion.

## ARGUMENT

### I.  GRANTING INTERMEC'S MOTION FOR A PROTECTIVE ORDER IS NECESSARY TO LIMIT DISCOVERY TO MATTERS RELATING TO THE PARTIES' CLAIMS AND DEFENSES.

Intermec does not seek to avoid its discovery obligations. Rather, it seeks judicial assistance (as Symbol is evidently no longer willing to meet and confer on the issue) for two reasons: first, to limit discovery to matters germane to this suit, and second, to ensure that discovery occur in the order most suited to permit the efficient resolution of this case.

Symbol's discovery requests go far beyond the scope of its "Complaint for Patent Infringement," and seek information on Intermec's laser based bar code readers built with Symbol scan engines which Symbol has now admitted (only after filing its discovery requests) are immune from any claim of this lawsuit (the "Immune Products," *see* Hutchinson Decl., ¶ 20.). Requiring Intermec to respond to discovery on admittedly irrelevant topics, as Symbol insists, would needlessly complicate and increase the expense of this litigation. Perhaps more importantly, allowing discovery to proceed on these topics would permit Symbol to stray much further than the discovery rules permit, beyond that which is "relevant to the claim or defense of any party." Rule 26(b)(1), Fed. R. Civ. P.

This suit does not implicate *any* Intermec products built with a Symbol laser scan engine purchased under the OEM Agreement—and Symbol agrees. The June 7, 2005 Declaration of Aaron B. Bernstein in this case (Dkt. No. 17) states, "Symbol *agrees* with Intermec that Intermec products that use Symbol scan engines purchased from Symbol

MAD/111070.2                                              3

under the OEM Agreement are immune from infringement under the two patents asserted in this case." (Emphasis in original.)

Despite this concession, Symbol's discovery requests broadly address all Intermec bar code readers, including the Immune Products. There are 45 Intermec bar code readers that are Immune Products and these products comprise the majority of the bar code readers sold by Intermec that are capable of scanning PDF417 or RSS over the last six years. (Hutchinson Decl., ¶¶ 20-21.) Although Intermec's counsel attempted in good faith to restrict the scope of discovery to exclude material relating to the Immune Products, Symbol's premature motion to compel shows its lack of seriousness in resolving this issue. (*Id.*, ¶¶ 24-28, 36-41.)

Reviewing and producing documents pertaining to the design, production and sales of the Immune Products would require Intermec to needlessly engage in substantial activities that simply have no bearing on this case. "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Intermec's motion invites the Court to clarify those boundaries with respect to products immune from Symbol's allegations in this lawsuit. Whatever hypothetical relevance this information about the Immune Products may have does not outweigh the considerable burden these discovery demands place upon Intermec. Allowing Symbol to pursue discovery on this issue would stretch the rules of discovery beyond reason. *See, e.g., Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 635 (D. Minn. 2000) (noting reluctance "to allow any party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."); *Hinton v. Entex, Inc.*, 93

MAD/111070.2                4

F.R.D. 336, 337 (E.D. Tex. 1981) (denying discovery as a "fishing expedition" that went beyond the plaintiff's factual allegations).

The Court need look no further than Rule 26 as authority for restricting the scope of discovery to exclude the immune products. Discovery is liberally permitted, of course, on any matter relevant to the claims or defenses of the parties. Rule 26(b)(1), Fed. R. Civ. P. There are two claims in this case, for infringement of two patents. Symbol has admitted that the Immune Products are not subject to the infringement allegations of this suit (Hutchinson Decl., ¶ 19), and thus are not relevant to Symbol's claims in this case.

Nor is information about the 45 Immune Products relevant to any of Intermec's affirmative defenses: noninfringement, invalidity of the patents, Symbol's unclean hands, breach of and license under the OEM Agreement, and limitation of the claims under 35 U.S.C. § 287. Rule 26 allows Symbol to test Intermec's defenses about the OEM Agreement through discovery, of course, but that discovery must be relevant to Intermec's two contract-based defenses. More importantly, it must not seek extraneous information Symbol simply hopes will become germane to its case. Discovery on these contract-related defenses must relate to (1) whether Symbol breached its covenant not to sue, and (2) the patent licenses given to Intermec under the OEM Agreement. The current broad requests are not tailored to those issues.

Unless the Court grants Intermec's motion to restrict discovery to exclude material relating to immune products, Symbol's discovery requests will require Intermec needlessly to engage in the futile exercise of compiling and reviewing many thousands of documents and preparing responses pertaining to 45 products that, by Symbol's own admission, are immune from this suit.

MAD/111070.2                               5

Moreover, Symbol must allow Intermec a reasonable time to respond to especially its document production requests. Given that Intermec's counsel has located over 2 million pages of potentially responsive documents just within the United States and is only now beginning to locate documents at Intermec's international offices, Symbol's proposed discovery schedule is simply unrealistic. *See* Section III, *infra*. Production of documents to Symbol in this case has commenced and will proceed diligently. Intermec invites the Court to set a reasonable time for the careful completion of such discovery.

## II. THE COURT SHOULD APPLY *ANTONIOUS* AND REQUIRE SYMBOL TO CLARIFY AND LIMIT ITS DISCOVERY REQUESTS ACCORDINGLY.

Before filing a federal patent infringement lawsuit, counsel must make a reasonable effort to determine whether the accused device satisfies every limitation in the relevant claims of the patent-in-suit. This is the central premise of *Antonious*, 275 F.3d 1066, and has become the backbone of the standing order requiring plaintiffs to provide such information with their Rule 26 Initial Disclosures in patent cases pending before Judge Shabaz in this Court. *See, e.g., Rexall Sundown, Inc. v. Weider Nutrition Int'l, Inc., et al.*, Case No. 03-C-613-S (Order, Jan. 28, 2004), *Avid Identification Systems, Inc. v. Allflex USA Inc.*, 04-C-067-S (Prelim. Pretrial Conf. Order, Mar. 23, 2004).

Having allegedly carried out this mandatory pre-suit exercise,[2] only Symbol knows and is in a position to clarify the true nature and scope of its claims for infringement. Intermec should not be required to perform or repeat Symbol's pre-suit

---

[2] Symbol's counsel, in a June 21, 2005 letter, confirmed that it had completed its Rule 11 duties: "Please be assured that Symbol's counsel has complied with its Rule 11 obligations in determining that the accused devices infringe at least one claim of the '655 and/or the '308 patents ...." July 6, 2005 Declaration of Lawrence Brocchini (Dkt. No. 23), Exh. 6. Symbol has not, however, indicated which of the "at least one" claims are infringed, or which items are the "accused devices."

MAD/111070.2                                6

investigation. And during discovery, Intermec should not have to guess which claims of which patent its accuser will try to assert.

Without knowing from Symbol which patent claims are at issue and which of Intermec's technologies allegedly infringe them, Intermec's obligations in responding to discovery are compounded to an unreasonable degree. Symbol's complaint provides scant guidance as to what documents and witnesses may be relevant in this case. The complaint identifies two patents owned by Symbol, U.S. Patent Nos. 5,243,655 and 5,457,308. *See* Complaint, ¶ 1. These patents collectively implicate up to 53 separate claims—but Symbol has not identified which claims are at issue.

The complaint also describes two categories of products made and/or sold by Intermec, "bar code readers capable of reading and decoding symbology known as PDF417" and "bar code readers capable of reading and decoding the symbology known as Reduced Space Symbology ("RSS")."[3] Complaint, ¶¶ 9, 15. But this choice of words, without explanation, only adds ambiguity. "RSS" is a technical term for a family that contains three linear symbologies (Hutchinson Decl., Exh. C), none of which is specified in Symbol's complaint or discovery requests. Symbol has not clarified which of Intermec's products are allegedly infringing, which of the 53 claims are allegedly infringed,[4] or even what some of the critical language in the complaint means.

---

[3]  Symbol also refers to these devices as the "Technology at Issue" in its discovery requests, not narrowing its language to any of the particular patent claims (many of which claim "methods," not devices).

[4]  In its Interrogatories (though not its Requests for Production), Symbol defined "Asserted Claims" to mean 11 individual claims in the patents. But this definition was limited only to the interrogatories and was open-ended ("Symbol reserves the right to augment and/or revise its list of asserted claims ...."). Thus, it appears that Symbol alleges infringement of at least 11, but perhaps as many as all of the 53 claims in the patents.

Intermec should not be required to divine the scope and nature of Symbol's allegations when Symbol's counsel already was obliged under Rule 11 to "compare the accused device with the construed patent claims." *Antonious*, 275 F.3d at 1073. Courts generally are correctly reluctant to allow a "kitchen sink" approach to patent infringement lawsuits, in which plaintiffs potentially could take advantage of numerous and dubious theories of infringement. For example, as the *Antonious* court noted:

> Advancing even a single invalid [infringement] theory forces the defendant to respond and to do work it should not have been required to do. 'Each claim takes up the time of the legal system and the opposing side. A single claim ... may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories.'

*Antonious*, 275 F.3d at 1075 (citations omitted).

Perhaps recognizing that overly broad charges of patent infringement may needlessly expand discovery and strain the judicial system, Judge Shabaz applies *Antonious* to the initial disclosures in all patent cases. Under *Antonious* and Judge Shabaz's now standard pretrial order in patent cases, "Plaintiff's counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations and *provide those determinations to the defendant* as initial disclosures under Rule 26(a)(1) ...." *Ty-Lan Enterprises, Inc. v. Menards, Inc.*, Case No. 04-C-084-S (Prelim. Pre-Trial Conf. Order, Mar. 9, 2004) (emphasis added).

Intermec too sees the need for this disclosure from Symbol. In fact, Intermec has requested this very information in its First Set of Interrogatories. Intermec has requested, among other things, that Symbol identify every accused product, the manner of the alleged infringement (i.e., direct or by equivalents), the claims that are allegedly infringed, and the basis for how each accused product satisfies ever claim limitation.

MAD/111070.2                                8

Intermec propounded this discovery on June 21, 2005, and Symbol's responses are due on or about July 21, 2005. Symbol's responses, assuming they are complete and forthcoming, hopefully will elucidate the scope of discovery in this case. Finally knowing which of its own technologies are "accused" will enable Intermec to hone its document review as it continues to respond to discovery. Knowing which claims are being asserted against it will allow Intermec to narrow its future requests of Symbol. Without this critical information from Symbol, however, Intermec is left with little guidance to inform its good faith efforts in responding to discovery.

For these reasons, and under the reasoning of *Antonious*, Intermec requests that the Court grant its motion for a protective order. Intermec fully intends to complete its responses to all of Symbol's discovery requests, but cannot effectively or efficiently narrow the universe of over 2 million potentially responsive documents without some indication from Symbol of which claims and accused devices are at issue. The Court should allow Intermec a reasonable amount of time from when Symbol discloses this information (by responding to Intermec's interrogatories) to complete its responses to Symbol's discovery requests.

### III. THE COURT SHOULD DENY SYMBOL'S MOTION TO COMPEL AS BASELESS AND PREMATURE.

Symbol's Motion to Compel – coming over ten months prior to the trial date in this case and merely two weeks after receiving Intermec's interrogatory answers and responses to production requests – is simply premature. No deposition has been scheduled which must now be postponed, no dispositive motion is currently due which cannot be completed and no trial is about to commence. Symbol has yet to articulate a single instance of prejudice suffered by it because of Intermec's actions.

MAD/111070.2                                    9

Symbol's action, taken without account for Intermec's very real logistical issues (including the need to review over 2 million pages of documents and to obtain documents and information from foreign offices and deal with language and cultural barriers) again exemplifies Symbol's gamesmanship undertaken as part of its effort to somehow move this case ahead of other litigation between these parties. That is all that Symbol's motion to compel is about.

Without a single citation to any legal precedent, Symbol seeks an order compelling production of documents that Intermec has, in general and, critically, subject to a suitable stipulation or protective order, agreed to produce. In early June, after it filed its discovery requests, Symbol filed the Declaration of Aaron Bernstein in which it admitted that Intermec's bar code reader products built with Symbol scan engines are immune from suit in this case. (Hutchinson Decl., ¶ 19.) Despite Symbol's admission, neither its pleading nor its discovery requests limit in any way inquiry and accusation with regard to the Immune Products. Only after Intermec provided its objections, which Symbol still curiously characterizes as baseless, did Symbol begin to discuss a stipulation to limit discovery regarding the Immune Products. (Hutchinson Decl., ¶¶ 27-25.) Nonetheless, ignoring the need to further focus its broad requests and ignoring that Intermec had told Symbol that it intended to obtain responsive materials from Intermec's office in Toulouse, France, Symbol demanded that all document production be completed by July 15. (*Id.*)

Notably, Symbol's position in this case is unique from its attitude in the other cases between the parties or their affiliates. (Hutchinson Decl., ¶¶ 3-7, 75.) Only here is Symbol insisting upon full compliance on an unrealistic time schedule. Only here is

Symbol unwilling to agree to rolling production (an understanding upon which Symbol is fully relying in producing its own documents in the other cases).

It is important to note that, at no time has Intermec refused to produce responsive documents or provide discoverable information in this case. Rather, Intermec has outlined to Symbol the steps it is undertaking to collect and produce requested discovery (Hutchinson Decl., ¶¶ 58-84), in spite of having no indication from Symbol which patent claims or accused devices are at issue. Because of the immense volume of potentially responsive information (well over 2 million pages in all cases) Intermec simply requires a reasonable amount of time to obtain all the responsive information. (Hutchinson Decl., ¶ 60.) The only thing Intermec has refused to do is provide a baseless estimate as to when production will be complete prior to fully ascertaining the scope of production. Such actions are not grounds for granting Symbol's motion. To the contrary, in light of the lack of any basis for this motion, this is a case in which Symbol's motion should not only be denied, but the Court would be justified in granting Intermec its expenses for fighting this unnecessary battle with resources it could otherwise be using to collect and produce information and documents for discovery.

A.     THERE IS NO BASIS FOR A MOTION TO COMPEL.

This case is an example of a situation where the parties should "back up a step, take a deep breath and then cut each other some slack." *Merrick, Inc. v. Fullmer Cattle Company, Inc.*, 2003 WL 23120121 at *1 (W.D. Wis. 2003). As shown by the Hutchinson declaration: (1) Intermec has been exercising appropriate diligence to comply in an efficient manner with all of its discovery responsibilities in all of the pending cases; (2) discovery in these cases is a complex and voluminous undertaking that simply takes

more time than Symbol is willing to allow and (3) Intermec has valid concerns arising from Symbol's failure to specify, either in its complaint or thereafter, which specific products it is accusing (now the subject of Intermec's motion for a protective order).

Contrary to Symbol's position, it is Symbol's responsibility to have determined as part of its Rule 11 pre-filing investigation which of Intermec's products it contends are infringing. *Antonious*, 275 F.3d at 1075 ("At a minimum, however, the evidence uncovered by the patent holder's [pre-filing] investigation must be sufficient to permit a reasonable inference that all accused products infringe"). Thus, it was Symbol's responsibility prior to filing this case to determine which Intermec products it was accusing. It was Symbol's responsibility to realize that the Immune Products were in fact immune from suit. It remains Symbol's responsibility to skillfully draft both its complaint and its discovery requests so as to not impose undue burdens on Intermec regarding the Immune Products. *Id.* at 1074 ("An attorney's obligation under Rule 11(b)(3) to conduct a proper prefiling investigation applies not only to the complaint but also to 'other paper[s]' filed in the case" including discovery requests). Symbol remains in violation of each of these responsibilities.

Moreover, Symbol's deadlines are totally unrealistic given the scope and volume of document production in these cases. Because it would be inappropriate for Intermec to merely dump irrelevant documents on Symbol, document production is limited by the speed of the document review process. *Rothman v. Emory University*, 123 F.3d 446, 454 (7th Cir. 1997) (imposing sanctions for producing irrelevant documents without adequate review). Intermec has located over 2 million pages of potentially responsive documents, just domestically. (Hutchinson Decl., ¶ 66.) Intermec's counsel, Freeborn & Peters, has

25 lawyers working on the review process. (*Id.*, ¶ 70.) Nine of these are reviewing documents likely relevant in this case. (*Id.*, ¶ 71.) Production to Symbol has started. (*Id.*, ¶ 51.) The process, however, is not instantaneous. As long as Intermec is acting diligently and Symbol is not prejudiced, Intermec must be allowed to produce documents on a schedule reasonable under the circumstances. *Fed. Sav. & Loan Ins. Corp. v. Village Creek Joint Venture*, 130 F.R.D. 357, 360 (N.D. Tex. 1989) (denying motion to compel that challenged the producing party's reasonable conditions: "I can perceive no reasoned basis for precluding a responding party from setting inspection guidelines on the procedures to be followed by inspecting parties").

In its headlong rush to push this case to the front of the line, Symbol has failed to establish even the basic need for an order compelling Intermec to provide discovery. Intermec has already provided initial responses to all of Symbol's requests and stated objections to those requests. Without taking any time to work with Intermec to resolve ambiguities in those requests or to even complete negotiation of a stipulation it agreed to consider, Symbol went ahead and filed this Motion to Compel.

"A motion to compel discovery is not proper before a discovery request has been denied." *Cherry v. Frank*, 2003 WL 23269343 (W.D. Wis. June 18, 2003) (stressing the need for the parties to participate in meaningful attempt to resolve differences prior to filing a motion). Rule 37(a)(2)(A) requires that the parties "in good faith confer[] . . . in an attempt to secure disclosure without court action. Rule 37, Fed. R. Civ. P. Where, as here, Plaintiff refuses to participate in a good faith attempt to confer with the other party, its Motion to Compel is premature. *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186 (3rd Cir. 2003), *quoting Cannon v. Cherry Hill Toyota*, 190

F.R.D. 147 (D.N.J. 1999) ("sending a fax and demanding a response by the next business day and threatening to file a motion to compel is a token effort rather than a sincere effort" to meet and confer).

Here, Intermec has clearly explained to Symbol both the need to limit discovery as to the Immune Products and Intermec's need for its counsel to travel internationally to collect many documents relevant to this case. (Hutchinson Decl., ¶¶ 27-57.) Symbol's participation in a "meet and confer" session in this case was, at best, a token effort which failed to meet the good faith requirement. In that conversation, Symbol's attorney refused to provide any meaningful clarification or to consider ways in which Intermec could provide responses while still addressing its concerns. (*Id.*) Instead, Symbol made a half-hearted attempt to agree to *consider* a stipulation narrowing the scope of discovery. Symbol then made unreasonable demands for timing of production prior to completing those negotiations. (*Id.*) Symbol has simply decided to unilaterally impose unreasonable deadlines and conditions on Intermec's discovery responses. This is not the type of good faith discussion intended by the meet and confer requirement of Rule 37.

### B.    INTERMEC'S DISCOVERY RESPONSES ARE ADEQUATE AND ITS OBJECTIONS HAVE NOT BEEN ADDRESSED.

Intermec timely provided responsive information and objections to Symbol's discovery requests. Symbol ignores this. A party responding to discovery has the right to object to discovery responses including seeking clarification of ambiguous discovery requests. *See* Rule 26(b)(2), Fed. R. Civ. P., *see also Cherry*, 2003 WL 23269343 (requiring plaintiff propounding discovery to "afford the defendants an opportunity to object in whole or in part to [discovery] request[s] . . . In addition [plaintiff] will have an

MAD/111070.2                                     14

opportunity to narrow or clarify his request if necessary before seeking court intervention.").

Symbol's Interrogatories 4, 5 and 7 are all contention interrogatories to which Intermec has objected, in part. Notably, Intermec has not refused to provide information. Rather, Intermec has stated that "discovery is just beginning and Intermec's investigation into the issues raised by this interrogatory is continuing" and provided initial responses. (Declaration of Lawrence Brocchini ("Brocchini Decl.," Dkt. No. 23), Exh. 4 (Intermec's Resps. to Interrogatories 4, 5 and 7).) Intermec's present responses are adequate at this stage in litigation. Indeed, "there is considerable support for deferring contention interrogatories until the end of the discovery period." *B. Braun Medical, Inc. v. Abbott Labs.*, 155 F.R.D. 525, 528 (E.D. Pa. 1994) (patent case), *citing In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 336 (N.D. Cal. 1985). *See also* Rule 33(c), Fed. R. Civ. P. The party serving contention interrogatories bears the burden of proving how an earlier response assists the goals of discovery. *Id.*, *citing Fisher and Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992). Symbol has done nothing to explain why it must have complete responses to its contention interrogatories at the beginning of the case.

Even if Symbol could make such a showing, that showing is weighed against the burden on the responding party to provide responses at this stage. *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996). Here, it would prejudice Intermec to provide such responses at this point because it would be forced to "articulate theories of [its] case not yet fully developed." *Id.*, *citing Storie v. U.S.*, 142 F.R.D. 317,

319 (E.D. Mo. 1991). Thus, at this point, there is no basis to compel responses to Interrogatories 4, 5 and 7. *See* Section I, *supra*.

There is also no basis for disposing of Intermec's objections to Interrogatories 2 and 3. Symbol has vaguely requested that Intermec identify information relating to products capable of reading and/or decoding RSS. RSS is a term which refers to at least three different types of symbologies. (Hutchinson Decl., ¶¶ 31-32.) To date, Intermec is still not certain which of these symbologies Symbol contends is covered by the patents-in-suit. It is, thus, appropriate for Symbol to specify which form of RSS it contends infringes and to limit it own discovery accordingly.

With regard to Interrogatory Nos. 1, 6, 8 and 9, Intermec has already agreed to provide additional responses as its investigation permits. This process has been time intensive and, to a great extent, seeks information that Intermec does not maintain in an easily referenced manner. All that Intermec has requested of Symbol is time to obtain the information. In light of Symbol's refusal to help explain its allegations, this is more than reasonable.

Aside from interrogatories, there is no basis for compelling Intermec to produce documents responsive to the vast majority of Symbol's 68 documents requests. For example, Request Nos. 2, 3, 7, 8, 11-18, 20-23, 25, 34, 45-50, 53, 61 and 64-66 all rely upon Symbol's defined term "Identified Products." But "Identified Products," according to Symbol, are those that *Intermec* must identify. (Brocchini Decl., Exh. 1 ("'The Identified Products' means each product [Intermec has] identified in response to Interrogatory Nos. 1 and 2 ....").) Symbol has the *Antonious* procedure backwards. Symbol would have Intermec fulfill Symbol's pre-suit obligation to analyze its patent

MAD/111070.2                                16

claims against accused products. Intermec has rightfully objected to these requests as ambiguous, and Symbol has refused to take sufficient and meaningful steps to confer with Intermec regarding the scope of the products implicated by its requests. Based on this lack of any meaningful definition, Intermec objected to each of these requests as overbroad and unduly burdensome (General Objection No. 2); vague and ambiguous (General Objection No. 10); and based on the fact that Symbol had refused to identify which devices it has determined to allegedly infringe its patents. (Brocchini Decl., Exh. 5 (Intermec's Resps. to Req. to Prod. Nos. 2, 3, 7, 8, 11-18, 20-23, 25, 34, 45-50, 53, 61, 64-66).) Thus, until Symbol cooperates in providing some definition for the term "Identified Products," Intermec cannot be compelled to produce documents responsive to these requests.

## CONCLUSION

For the above stated reasons, Intermec's Motion for a Protective Order should be *GRANTED* and Symbol's Motion to Compel Production of Documents and Interrogatory Answers should be *DENIED*.

DATED this 13th day of July, 2005.

Respectfully submitted:

By: _____
Attorneys for Defendant
Intermec Technologies Corp.
WHYTE HIRSCHBOECK DUDEK S.C.
Eugenia G. Carter
State Bar No. 1011447
Gabriel S. Gross
State Bar No. 1037934
One East Main Street, Suite 300
Madison, WI 53703-3300
(608) 255-4440 (telephone)
(608) 258-7138 (facsimile)

FREEBORN & PETERS LLP
Leland W. Hutchinson, Jr.
Carson P. Veach
Jennifer L. Fitzgerald
Jeffrey M. Hansen
311 S. Wacker Drive, Suite 3000
Chicago, IL  60606-6677
(312) 360-6503 (telephone)
(312) 360-6572(facsimile)