05 - 528

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

SYMBOL TECHNOLOGIES, INC.,

    Plaintiff,

v.                                                            05-C-0256 C

INTERMEC TECHNOLOGIES CORP.,

    Defendant.

---

**SYMBOL TECHNOLOGIES, INC.'S MEMORANDUM
IN FURTHER SUPPORT OF MOTION TO COMPEL AND
IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

---

Symbol Technologies, Inc. ("Symbol") submits this memorandum (1) in further support of its motion to compel Intermec Technologies Corporation ("Intermec") to produce documents and answer interrogatories; and (2) in opposition to Intermec's motion for a protective order.

Though this Court has granted Intermec's motion to transfer this action to Delaware, Symbol will be moving for reconsideration of that order, and, therefore, Symbol files its reply/opposition with this Court.

**PRELIMINARY STATEMENT**

**Symbol's Motion To Compel**

Having agreed to withdraw its baseless objections to Symbol's discovery and to properly answer interrogatories, Intermec nevertheless opposes Symbol's motion by arguing that Symbol is being unreasonable in asking for a definite timeframe for Intermec's compliance. In this part of its papers, Intermec supposedly agrees to produce documents, but only if Symbol does not want them any time soon. Though Intermec

offers a host of feeble excuses, none justifies any further delay. Rather, they point to more of the same if Intermec is allowed to continue unchecked. All Symbol asks is that Intermec not be allowed to unilaterally dictate the pace of its own compliance, but that the Court do so.

In the next part of its brief, Intermec asserts alternately that it didn't really agree to withdraw its objections and provide discovery, at least not if Symbol is going to press for that discovery. Thus, Intermec reasserts previously withdrawn objections. Intermec should not, however, be allow to further delay production by resurrecting objections that it tacitly conceded were specious by agreeing to withdraw them. Intermec should be compelled to provide that proper discovery.

**Intermec's Tactical Motion To Compel Should Be Denied**

Intermec's tactical motion for a protective order should be dismissed for what it is: another attempt by Intermec to excuse its past discovery failures and further delay its production. First, Intermec wrongly asserts that Symbol is seeking improper discovery regarding so-called "Immune Products." Symbol has told Intermec that it agrees that some limit on this discovery is appropriate and has offered to work with Intermec on a stipulation properly reflecting this. Intermec's counsel agreed to prepare such a stipulation but filed this motion instead. Symbol stands ready to discuss this issue, which is clearly not properly before the Court at this time.

Second, Intermec has all the information it needs regarding the claims and products at issue to provide the requested discovery, and it has not shown why it needs a detailed claim chart and claim construction before it can provide discovery. Intermec itself knows the identity of the accused products – those not subject to the OEM

2

Agreement and that read either of the PDF417 or RSS symbologies. It is also aware of the patent claims being asserted at this time, although, frankly, Intermec never says why it needs that information before it can provide discovery. This request is simply Intermec's latest ploy to delay production, and as such it should be rejected.

## ARGUMENT

### I. This Court Should Compel Intermec To Immediately Produce Documents And Properly Answer Interrogatories

#### A. Intermec Cannot Justify Its Failure To Provide Timely Discovery Or Even Say When It Will Make That Discovery

Intermec's threshold position is that it *will* produce documents, but that because it does not know when it can do so, no one, not even the Court, should dictate a timetable for production. (Defendant Intermec Technologies Corporation's Brief in Support of its Motion For a Protective Order and in Opposition to Symbol Technologies, Inc.'s Motion to Compel Product of Documents and Interrogatory Answers ("Intermec Mem.") at 11-14.) To justify its continued delay, Intermec goes on about the many supposed logistical issues it faces (2 million documents to review in multiple cases; purported need to travel to France, etc.). Based on this tale of woe, Intermec asks Symbol – and now this Court – to just "cut it some slack" and trust it to get the job done in its own good time. (*See* Intermec Br. at 11.) Intermec, however, has not justified any further delay and certainly has said nothing from which the Court can conclude that Intermec will timely complete production on its own.

Initially, Intermec's request that Symbol be more understanding of the logistical difficulties Intermec faces from multiple litigations comes with particular ill grace since Intermec prepared a massive International Trade Commission ("ITC") filing against

3

Symbol,[1] when it should have been satisfying its discovery obligations here. Proceedings in the ITC move on a very fast track, and assuredly, Intermec put its ITC discovery in place before filing that case (something Intermec does not deny in its opposition). If Intermec was truly overwhelmed with discovery in pending cases, it should not have filed a new, fast-track litigation. No doubt, Intermec will not cut Symbol any "slack" if Symbol tries to get more time to do anything in the ITC case.

The fact is that Symbol has been and is willing to "cut Intermec *some* slack" in this case. (*See, e.g.*, Exhibit 7 to the July 6, 2005 Declaration of Lawrence Brocchini In Support Of Symbol Technologies, Inc.'s Motion To Compel Discovery From Intermec Technologies Corporation ("Brocchini Decl.") at 5-6 (asking Intermec to say when it will start and complete its rolling production); Brocchini Decl. Exh. 8 at 2-3 (Symbol asked at meet and confer for dates certain, which Intermec refused to give).) What Symbol is not agreeable to – and what this Court should not permit – is Intermec continuing to act as if it is free to give discovery only when it gets around to it. Intermec's conduct during the short life of this case – including bogus discovery objections and interrogatory non-answers, lame excuses (France, etc.) and making a new ITC filing a higher priority than this case – shows that, if left to its own devices, Intermec will chose delay over compliance.

Intermec's symbolic (no pun intended) production of *1820 pages* of documents falls well short of showing, as Intermec asserts, its good faith and diligence. (Intermec Mem. at 13; Hutchinson Decl. ¶ 51.) Far from it. That paltry production only further

---

[1] Intermec misses the point (Hutchinson Decl. ¶¶ 85-88) when it says that the ITC work was not done by Freeborn & Peters (counsel in this case), but by F&P's ITC co-counsel, because *Intermec* had to divert *its* resources towards preparing the ITC case and away from gathering responsive material in this case. Freeborn & Peters is named on the ITC complaint. (*See* Brocchini Decl. Exh. 9.)

4

legitimizes Symbol's concern that without this Court's intervention, Intermec will be dribbling documents to Symbol over the next six months or more. That, obviously, is unacceptable.

Though Intermec claims to have amassed a small army busily searching through Intermec's domestic offices and reviewing documents, (*see generally* Hutchinson Decl. ¶¶ 58-84), its production to date tells another story. First, the documents in Intermec's first "wave" of production appear to come from only several Intermec employees and only from Intermec's Everett office. (*See* Reply Declaration of Lawrence Brocchini, dated July 18, 2005 ("Brocchini Reply Decl.") ¶ 2.) Second, the handful of documents produced in that first wave comprise a total of *only 112 documents*, and of the 1804 pages produced, over one thousand pages (Production Nos. IPDF 000022 - IPDF 0001085, which are two documents constituting binders of patents) are merely Intermec's own publicly available patents that tell Symbol nothing about the Intermec products at issue. (*See* Brocchini Reply Decl. ¶ 2.) Many other produced documents are of equally questionable relevance. (*See* Brocchini Reply Decl. ¶ 2.) If, as Intermec claims, it has brought such great effort to bear on document production, why has it resulted in such an embarrassingly small production to date?

As Symbol prepared to file this reply on July 18, it received another "gesture" of Intermec's "good faith and diligence" in the form of Intermec's "second wave" of document production. (*See* Brocchini Reply Decl. ¶ 3.) This time, Intermec did manage to double – to 4126 – the number of pages it produced versus its 1820 page first wave produced a week earlier. (*See* Brocchini Reply Decl. ¶ 3.) That brings the *grand total of Intermec production to date in this case to 5,947 pages*, reflecting three-tenths of one

5

percent of the purported universe of 2,000,000 potential documents. This continued trickling of documents (which Symbol has not yet reviewed for "substance,") further illustrates why the Court should intervene.

Intermec next contends that this motion is premature since Symbol is not being prejudiced by impending pre-trial deadlines, depositions or trial. (Intermec Mem. at 9.) Though Symbol does not have to show prejudice to obtain proper, timely discovery, it is being harmed by Intermec's delay. The pre-trial deadlines in this case (assuming Symbol's motion for reconsideration is granted and this motion and the case remain in this District) will fast be approaching, and Symbol will need time to review Intermec's information before it can, for example, take depositions and file expert reports and dispositive motions. The Preliminary Pretrial Conference Order specifically directs parties "to file discovery motions promptly-if self-help fails," noting that if a party fails to do so, deadlines won't be adjusted because discovery proceeded too slowly. (Preliminary Pretrial Conference Order at 5.) Symbol is well within its rights – particularly in light of Intermec's foot dragging – to seek the Court's assistance now.

Intermec's statement that Symbol's meet and confer effort was "at best, a token effort which failed to meet the good faith requirement" (Intermec Mem. at 14) is absurd. As set forth in the Brocchini Declaration and Exhibits thereto, despite its repeated, good faith efforts, Symbol has been unable to obtain Intermec's commitment to a time frame for compliance.[2] Indeed, to this day, even in response to this motion, Intermec has not

---

[2] For example, Symbol raised its concerns with Intermec's discovery in a letter carefully detailing Intermec's deficiencies and asking when it can expect Intermec's first production and substantial compliance. (*See* Brocchini Decl. Exh. 7.) Thereafter, during the meet and confer, Intermec conceded – though it now backtracks – the deficiency in its interrogatory answers, *unconditionally* withdrew all objections to production and agreed (subject to a stipulation limiting discovery on certain products) to provide documents. (Brocchini Decl. Exh. 8 (discussing stipulation, but stating that "[i]n the mean time, as we agreed, this issue should not hold up other discovery, including regarding Intermec's imaging

6

said when it will substantially complete production. Intermec apparently would require that Symbol beg for production – and be rebuffed by Intermec – several more times before moving to compel. *That* it is silly. Intermec made it imminently clear to Symbol that unless the Court ordered otherwise, Intermec would provide discovery only on its timetable. Moving was Symbol's only option.

Finally, the fact that Symbol agrees in principal that certain information regarding Intermec products manufactured using scan engines purchased from Symbol under the OEM Agreement need not be provided, does not excuse Intermec from providing *any discovery.* Intermec knows which of its products use such engines. (*See* Decl. of Theresa Hillstrom.) Intermec has no excuse for not producing documents regarding products which do not use such engines, as well as non-product specific information and responses to all the interrogatories.

### B. Intermec's Discovery Responses Have Not Been Adequate

During the parties meet and confer, Intermec committed to provide proper answers to Interrogatory Nos. 1 through 7, and to provide (subject to a stipulation on certain products which Symbol agreed to work with Intermec on, but which Intermec never provided) documents. Intermec should not be allowed to weasel out of that oral agreement to provide information and produce documents (which it does not deny and which was confirmed the next morning in a detailed writing never challenged by

---

scanners").) Though Symbol again asked for a date certain for production and substantial compliance during the meet and confer, it received neither. Rather, Symbol got the same response the Court is getting here: "we have to go to France and will get around to doing it when we get around to doing it." Faced with that unacceptable answer, Symbol proposed a timetable for compliance, (*see* Brocchini Decl. Exh. 8), which, Intermec never had the courtesy to respond to. That left Symbol with no choice given the exigencies of practice in this Court but to request judicial assistance.

7

Intermec). (*See* Brocchini Decl. Exh. 8.) At the very least, Intermec's agreement to withdraw its objections reveals them for the baseless and improper delay tactic they were.

### 1.   As Previously Agreed, Intermec Should Be Compelled To Properly Answer The Interrogatories

Intermec's revived position that certain interrogatories are premature contention interrogatories not properly asked at this stage of litigation, (Intermec Mem. at 15, citing Interrogatory Nos. 4, 5 and 7), is belied both by its prior agreement to provide more information and the fact that it served similar "contention" interrogatories on Symbol. (*See* Intermec's First Set of Interrogatories to Symbol, *e.g.*, Interrogatory Nos. 1 and 2 and (seeking basis for infringement contentions); and 6 (damages).) Intermec should be compelled to provide this information immediately. Similarly, Intermec should be required to promptly answer four interrogatories (Nos. 1, 6, 8 and 9) which it concedes call for information uniquely within its possession (Intermec Mem. at 16). Intermec's tired refrain that it'll get to it "as its investigation permits" (Intermec Mem. at 16) just does not cut it. Intermec should provide the information now.

As to Interrogatory Nos. 2 and 3 requesting identification on products that read the RSS symbology, Intermec cannot seriously rely on its initial, lame objection – withdrawn during the meet and confer (Brocchini Decl. Exh. 8 at 2) – that it is confused by what Symbol means by RSS (Intermec Mem. at 16). Intermec's counsel obviously understood sufficiently what Symbol wanted when he agreed to answer the interrogatory during the meet and confer. (Brocchini Decl. Exh. 8 at 2.) Moreover, regardless whether there is one or several types of RSS bar codes used, there is no evidence that Intermec's RSS-capable products do not read all the types. Indeed, Intermec markets its products

8

generally as capable of decoding RSS, without regard to type (*see* Brocchini Decl. Exh. 7, Intermec Product Information), strongly suggesting that the products read all types.

### 2. Intermec Should Be Compelled To Produce Responsive Documents In A Timely Manner

Putting aside Intermec's supposed objection to production based on claimed lack of product identification, Intermec does not object to producing documents called for in Requests 1, 4, 5, 6, 9, 10, 19, 24, 26-33, 35, 36-44, 51, 52, 54,-60, 62, 63, 67 and 68. (*See* Intermec Mem. at 16-17.) Intermec should be compelled to produce those documents immediately.

Intermec's claim that it does not know what Symbol means by "Identified Products" is also wrong. "Identified Products" is defined as products Intermec identifies in response to Interrogatory Nos. 1 and 2 (Symbol First Set of Requests for Production, Brocchini Decl. Exh. 2 at 3), which, in turn, are defined as products which are capable of reading and/or decoding bar codes known as PDF417 and/or RSS (Symbol First Set of Interrogatories, Brocchini Decl. Exh. 3, Nos. 1 and 2). Intermec knows which of its products read/decode those bar codes. Thus, it knows what Symbol is looking for, and should be compelled to produce.

## II. Intermec's Request For A Protective Order Should Be Denied

Intermec's motion for a protective order should be summarily dismissed as just another effort by Intermec to divert attention from its past foot dragging and justify continued delay. Intermec has not (1) shown that Symbol is seeking any discovery to which it is not entitled or (2) identified any information Intermec legitimately needs to comply with discovery.

### A. Intermec Wrongly Claims That Symbol Seeks Irrelevant Documents Regarding So-Called "Immune Products"

Intermec's request for a protective order excluding all documents concerning 45 so-called "Immune Products" is grossly overbroad, but more importantly, is grossly premature, as this is an issue which the parties agreed to work out a stipulation on. (Brocchini Decl. Exh. 8 at 1-2.) Though Intermec failed to draft and circulate that stipulation, as it said it would, Symbol remains prepared to discuss the issue, rather than burden the Court.

As Symbol has assured Intermec in the context of these products, "Symbol, of course, is only interested in obtaining relevant (as defined under FRCP 26) materials." (Brocchini Decl. Exh. 8 at 1.) Therefore, when Intermec suggested a stipulation limiting discovery as to those products, Symbol readily agreed to work with Intermec to obtain agreement, which Symbol remains willing to do. To facilitate the process, Symbol suggested that Intermec draft and circulate what it had in mind for Symbol to consider[3] and discuss. Intermec's counsel agreed that was a good idea and committed to circulate a draft. (Brocchini Decl. Exh. 8 at 1-2.)

The Court therefore may ask why this issue is before it. Simple: Intermec's counsel never circulated the draft, but filed this motion instead. Intermec apparently sees more benefit in having the "Immune Products" as a discovery issue – providing it with a fig leaf to obscure its past discover failures and justify further delay – than in having this issue resolved. The "Immune Products issue" is simply a red herring. Symbol, for its part, remains committed to working out such a stipulation, and does not believe that the Court's assistance is needed at this time.

---

[3] Intermec takes great umbrage that Symbol said it would only "consider" and discuss (Intermec Mem. at 14) – not agree to sight unseen – Intermec's proposed stipulation.

10

To the extent, however, that the Court does address this premature argument, Intermec's request to exclude all documents concerning an "Immune Product" is overbroad. The fact that certain products are not the direct subject of an infringement claim does not foreclose all discovery about those products, as Symbol pointed out to Intermec's counsel.[4] Thus, if the Court reaches the merits of Intermec's untimely request, Symbol asks leave to submit a proposed order outlining how it contends the discovery should be limited.

### B. Intermec Knows What Products And Claims Are At Issue And Can Comply With Its Outstanding Discovery Obligations

In a last ditch effort to justify further delay in complying with its discovery obligations, Intermec concocts the argument that it cannot give discovery because it does not know which products are accused of infringing which claims. Therefore, Intermec contends, Symbol should first give Intermec a detailed claims chart comparing each accused product against each asserted claim. There is, however, no secret what claims are at issue and what products Symbol contends at this stage infringe the patents, and Intermec's extraordinary and unprecedented[5] request should be denied.

As to products, Symbol currently believes that all Intermec's bar code readers that do not incorporate a Symbol scan engine purchased from Symbol under the OEM

---

[4] For example, marketing documents showing the desirability of a decoding feature on an "Immune Product" and other damages-related documents might still be relevant to the case. As another example, since Intermec contends that the patents are limited only to laser scanners, and not imaging scanners, the similarity of the data acquisition and decoding software in Intermec's imaging scanners relative to its laser scanners is relevant to the issue of equivalents. Additionally, Intermec has publicly announced that it will be selling laser scanners using either an Intermec laser engine or non-Symbol laser engine, and documents concerning those scanners would be relevant. (*See* Brocchini Decl. Exh. 8 at 1-2.)

[5] In attempting to condition its compliance with discovery on Symbol providing a claims chart, Intemec mistakenly relies on *Antonious v. Splading & Evenflo Companies*, 275 F.3d 1066 (Fed. Cir. 2002). That case has nothing to do with discovery and certainly does not suggest, as Intermec does, that patent plaintiff be required to give a claims chart before it can obtain any discovery. *Antonious* deals with Rule 11 obligations of patent plaintiffs – which obviously is not an issue here – and is inapposite.

11

Agreement and that read and decode PDF417 and/or RSS (any type) bar codes infringe the patents. Intermec knows which of its products fit into those categories.

Next, though Intermec never explains why it needs to know the claims at issue in order to provide discovery at this stage, it has that information: Symbol specifically identified Claims 7, 15, 23, and 31 of the '655 Patent and Claims 2-7 and 21 of the '308 Patent in its discovery requests to Intermec. (*See* Symbol Technologies, Inc.'s First Set of Interrogatories to Intermec Technologies Corp., Brocchini Decl. Exh. 2 at 2, Definition 6, "Asserted Claims.") What more could Intermec conceivably need to know to provide discovery at this stage? Intermec never explains why it legitimately needs a product-by-product claims chart now before it can provide the discovery requested to this point. There is no legitimate reason. Of course, Symbol will provide more detailed claim charts and infringement analyses in due course. That is has not yet done so, however, is not a predicate to Intermec providing timely discovery now and certainly does not justify Intermec's wholesale failure to provide any discovery.

## CONCLUSION

In sum, Intermec should be compelled to promptly comply with all of its outstanding discovery obligations, and the Court should grant Symbol's Motion to Compel and deny Intermec's Motion for a Protective Order.

**MICHAEL BEST & FRIEDRICH LLP**

By: _____
Jeffrey S. Ward
Shane A. Bruner
One South Pinckney Street
Suite 700
Madison, Wisconsin 53703
(608) 257-3501

Attorneys for Plaintiff Symbol Technologies, Inc.

Of Counsel:

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022

Dated: July 18, 2005

Q:\client\014980\9001\B0600562.1