**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

SYMBOL TECHNOLOGIES, INC.,

    Plaintiff,

v.                                                                                    05-C-0256 C

INTERMEC TECHNOLOGIES CORP.,

    Defendant.

**SYMBOL TECHNOLOGIES, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND INTERROGATORY ANSWERS
FROM INTERMEC TECHNOLOGIES CORPORATION**

Symbol Technologies, Inc. ("Symbol") submits this memorandum in support of its motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel Intermec Technologies Corporation ("Intermec") to produce documents and answer interrogatories.

**PRELIMINARY STATEMENT**

Symbol's efforts to get discovery from Intermec in a timely manner have been met with nothing but delay tactics. As a result, Intermec has not produced a single document in this case; nor has it provided a single substantive interrogatory response. Indeed, Intermec will not even tell Symbol when it will *start providing, let alone complete*, any meaningful discovery.

Intermec kicked off its discovery "delay" campaign first by asserting a series of baseless "objections" – now all withdrawn – apparently designed solely to buy Intermec time. Those objections included "arguments" that (1) as Intermec construes the patent

claims, its products at issue did not infringe, which Intermec believed limited or eliminated its discovery obligations; (2) Intermec did not understand what Symbol meant when it requested identification of products that read and/or decode a bar code know as "RSS" (though Intermec markets products as being capable of reading/decoding RSS, an industry-accepted bar code); and (3) it was unaware at this stage in the case of information uniquely in Intermec's possession, such as when it learned of the patents-in-suit and whether it had any opinions of counsel. Each of those objections was baseless, which we now know conclusively because, when called on them, Intermec *withdrew each and every one of them*.

Without any legitimate "objections" remaining to production, Intermec now is avoiding discovery simply by saying it does not have the discovery ready and can't say when it will be ready. Instead, Intermec offers the lame "excuse" that it cannot begin to provide any meaningful discovery until after it meets with certain of its employees in France (Intermec is headquartered in Bellevue, Washington). That meeting, Intermec says, will not even take place until the week of July 10, 2005, after which time Intermec has "generously" agreed to let Symbol know when it will get around to beginning to produce documents. Beyond that, Intermec has made no commitments regarding the timing of discovery.

It turns out that complying with discovery obligations in this case has not been Intermec's top priority over the last several months. Intermec apparently has decided that its discovery obligations in this case can wait, and therefore has deployed its resources elsewhere. Specifically, while Intermec has been "unable" to provide responsive discovery in this case on a timely basis (and couldn't arrange a critical trip to France until

2

July 10), it has found a way over the last several months to produce a detailed, 1000-plus page complaint (with exhibits) which it filed last week against Symbol with the International Trade Commission ("ITC") asserting three new Intermec patents. Where there is a will (Intermec's case against the ITC), there apparently is a way.

Regardless of the reason for Intermec's delay – and it has offered nothing justifying it, particularly in light of the massive ITC filing – Symbol should not have to wait until Intermec finally feels like getting around to providing discovery. Symbol, therefore, respectfully request the Court's assistance in obtaining timely compliance by Intermec with its outstanding discovery obligations.

## FACTUAL BACKGROUND

**A.     Symbol's Complaint, Requests For Production And Interrogatories**

Symbol is a recognized global leader in secure mobile information systems that integrate application-specific hand held computers with wireless networks for data, voice and bar code data capture. Symbol's product lines include, *inter alia*, bar code scanning, advanced data capture products, radio frequency identification technology, hand-held and fixed mount mobile computers, and wireless and local and wide-area networks. Intermec designs, manufacturers and sells portable data collection equipment, including bar code scanning and reading devices.

On April 28, 2005, Symbol served its complaint alleging that certain bar code reading devices and systems made, used and/or sold by Intermec infringe Symbol's U.S. Patent Nos. 5,243,655 ("'655 Patent") and 5,457,308 ("'308 Patent) (collectively, "Symbol" Patents). The '655 Patent is directed toward an aspect of the reading and decoding of a bar code type known as PDF417. The '308 patent covers bar code readers that read and decode a bar code type or "symbology" known as Reduced Space

Symbology or RSS ("RSS"). A trial on Symbol's claims is scheduled to commence in May 2006.

On May 27, 2005, Symbol served its First Set of Requests for the Production of Documents and Things to Intermec Technologies Corporation ("Document Requests") and First Set of Interrogatories to Intermec Technologies Corporation ("Interrogatories"). The Document Requests and Interrogatories are Exhs. 1 and 2 to the July 6, 2005 Declaration of Lawrence Brocchini ("Brocchini Decl."). The Document Requests seek information relevant to Symbol's claims of infringement, willful infringement and damages, as well as Intermec's defenses. Among other things, Symbol seeks documents regarding Intermec's products that read and/or decode bar codes or symbologies known as PDF417 and RSS, both of which relate to the patents-in-suit. *See* Symbol's Document Requests. Symbol's Interrogatories similarly seek information relevant to Symbol's patent claims and Intermec's defenses, including (1) identification of Intermec products that read and decode PDF417 and RSS (Interrogatory Nos. 1-3); (2) the bases for Intermec's non-infringement and non-willful infringement positions and invalidity/unenforceability defenses (Nos. 4-5, 7); (3) information regarding Intermec's awareness of the Symbol Patents (No. 6); and (4); identification of Intermec's opinions of counsel regarding the Symbol Patents (No. 8). (*See* Symbol's Interrogatories.) There is currently no dispute as to the relevance of any of the requested information or documents.

4

**B. Intermec's Delay Tactics: Baseless Objections And Refusal To Say When It Will Start Or Complete Discovery**

**1. Intermec's Delay Through Baseless Objections Which It Has Now Withdrawn**

From day one, Intermec has worked to avoid providing any discovery. Initially, it sought to block discovery by asserting a series of ill-founded objections, several of which are discussed below.

First, Intermec attempted to avoid discovery based on a claim construction it apparently intends to offer in support of its non-infringement position. Specifically, it advised Symbol that it construed the claims of Symbol Patents as covering only a certain type of bar code reading technology; namely laser bar code scanners. Thus Intermec contended that the claims did not cover other bar code reading technologies, in particular bar code imagers, which Intermec's counsel contends do not "scan." (*See* June 16, 2005 letter from Leland W. Hutchinson, Jr., Esq. to Shane Brunner, Esq. ("Hutchinson June 16 Letter"), Brocchini Decl. Exh. 3.) Because, according to Intermec, all the laser bar code scanners it has sold use laser scan engines purchased from Symbol under an OEM agreement, and those are not the subject of Symbol's patent claims in this case, Intermec essentially contended that it did not have to produce anything. *Id.* Intermec again asserted this claim construction as an objection to 58 of Symbol's 68 document requests, as well as several interrogatories. (*See* Intermec's Responses to Symbol Technologies, Inc.'s First Set of Requests for Production [Sic] and Things ("Intermec Document Response"), Brocchini Decl. Exh. 5; Intermec's Response to Symbol Technologies, Inc.'s First Set of Interrogatories ("Intermec Interrogatory Response"), Brocchini Decl. Exh. 4, Response No. 1; *see also* Hutchinson June 16 Letter.)

In response, Symbol advised Intermec that it disagreed that the Symbol Patents are limited to any particular bar code technology or exclude bar code scanners that use imaging technology. (*See* June 21, 2005 letter from Lawrence Brocchini to Leland W. Hutchinson, Jr., Esq., ("June 21 Brocchini Letter"), Brocchini Decl. Exh. 6; June 27, 2005 letter from Lawrence Brocchini to Leland W. Hutchinson, Jr., Esq., ("June 27 Brocchini Letter"), Brocchini Decl. Exh. 7.) Symbol also pointed out that Intermec's litigation position that imaging bar code readers do not "scan" is contrary to Intermec's own product marketing materials, which refer to its imagers as "scanners" that "scan." (*See* June 27 Brocchini Letter and Intermec materials appended thereto.) In any event, as Symbol pointed out, Intermec's hoped for claim construction was not a proper basis for denying Symbol discovery. (*See id.*) Thereafter, during a "meet and confer" teleconference on June 30, 2005, Intermec withdrew this baseless claim construction objection to discovery. (*See* July 1, 2005 letter from Lawrence Brocchini to Leland W. Hutchinson, Jr., Esq. ("July 1 Brocchini Letter"), Brocchini Decl. Exh. 8.)

Second, Intermec – in the Intermec Interrogatory Response not signed (under oath or otherwise) by Intermec as required by Rule 33 – refused to identify its products capable of reading and decoding the RSS symbology. Instead, Intermec's counsel asserted frivolously that Intermec was somehow confused about what Symbol meant by the term "RSS." (*See* Intermec Interrogatory Response, Response No. 2.) Symbol pointed out that (1) RSS is a well-known, industry-recognized bar code symbology; (2) an Intermec employee served as a member of the industry committee that reviewed the RSS symbology before it was published; and (3) Intermec has no problem understanding what RSS is in marketing to its customers. (*See* June 27 Brocchini Letter and attached

6

Intermec marketing materials.) In the face of Symbol's arguments, Intermec withdraw its objection based on this purported confusion about RSS and agreed to provide – at some as yet unspecified time – the requested information. (*See* July 1 Brocchini Letter.)

Third, Intermec cited the fact that "discovery is just beginning" as a basis for refusing to answer several interrogatories as to which the stage of discovery is irrelevant. (*See* Intermec Interrogatory Response Nos. 4-8.) For example, Intermec objected to (1) "describ[ing] the circumstances under which Intermec first became aware of each of the Symbol Patents," and (2) stating whether Intermec has obtained any opinions of counsel, each time offering the excuse that "discovery is just beginning and Intermec's investigation into the issues raised by the Interrogatories is continuing." Without providing any substantive response, Intermec explained that its "investigation into these matters is ongoing" and graciously offered to "provide an amended response to this interrogatory as Intermec becomes aware of the pertinent information."[1] (Intermec Interrogatory Responses, Response Nos. 6 and 8; *see also* Response Nos. 4 and 7 (seeking bases for non-infringement and no willful infringement positions) and 5 (seeking bases for invalidity/unenforceability defense).) When confronted with the fact that these interrogatories call for information within Intermec's exclusive possession, Intermec agreed to provide substantive answers to these interrogatories.[2] (*See* July 1

---

[1] Logically, Intermec's offer to provide an amended response identifying opinions of counsel when Intermec "becomes aware" of the information, implies that Intermec has not obtained – and therefore has not relied upon – opinions of counsel, and therefore cannot assert advice of counsel as a defense to Symbol's willful infringement claims. Either Intermec knows about and relied upon advice of counsel, or it didn't.

[2] Intermec agreed to provide answers to Interrogatory Nos. 1-7. With respect to Interrogatory No. 8, Intermec's counsel indicated during the meet and confer on June 30 that he needed to confer with Intermec, and would advise us as to whether Intermec would provide the requested information. There is no legitimate excuse for counsel's failure to consult Intermec at the time the interrogatories were prepared to resolve this issue. In any event, the Court should compel Intermec to respond to this interrogatory requiring Intermec to identify opinions of counsel relating to the Symbol Patents.

Brocchini Letter.) Again, however, Intermec did not say when it will provide the information. (*Id.*)

### 2. Intermec's Refusal To Provide Discovery Or Even Commit To When It Will Start To Provide Information

With its objections withdrawn, Intermec, of course, had an obligation to promptly provide discovery. When Symbol's counsel asked when Intermec would provide the outstanding discovery, Intermec's counsel could not say when, though he stated that Intermec was not now in a position to provide any documents. (July 1 Brocchini Letter.) Instead, Intermec's counsel offered the "excuse" that he needed to travel to France to obtain information to answer interrogatories and obtain decoding source code and other documents residing there, which could not, he contended, be done until the week of July 10. (*Id.*) Thus, Intermec committed only to providing information and documents at some unidentified time after those meetings during the week of July 10. (*Id.*)

As Symbol pointed out, however, the purported need to meet in person with Intermec's own employees in France does not justify Intermec's failure again (Intermec's Rule 26 initial disclosures were also late) to provide timely disclosure. (*Id.*) The requested information and documents (to the extent they might be in France) could easily be gathered by phone, videoconference, email, overnight delivery and/or an earlier trip to France. (*Id.*) For example, information responsive to Interrogatory No. 4, which Intermec's counsel specifically cited as requiring a trip to France, regarding non-infringement contentions could easily be obtained by phone; source code, also specifically mentioned, can easily be downloaded to a hard drive or CD and mailed. More importantly, the France excuse would in any event not excuse Intermec's inability to produce *any documents* from its headquarters or other offices here in the United States.

Intermec has known about this litigation since April 28, 2005. It has no legitimate excuse for failure to provide any discovery. Indeed, as discussed further below, it is apparent that Intermec has decided to ignore and delay discovery in this case – to Symbol's prejudice – so that it can devote its energy, time and effort into developing another case against Symbol.

## C. While Avoiding Discovery Obligations In This Case, Intermec Prepared And Filed A New Patent Complaint Against Symbol Before The International Trade Commission

A possibly significant reason for Intermec's failure to fulfill its discovery obligations in this case became apparent soon after Symbol's counsel's telephone meet and confer with Intermec's counsel on June 30. Later that same day, Intermec filed a Section 337 complaint with the International Trade Commission pursuant to the Tariff Act of 1930, 19 U.S.C. § 1337, accusing certain Symbol devices of infringing three Intermec Patents.[3] (*See* Intermec Complaint Under Section 337 of the Tariff Act of 1930, As Amended, *In re Certain Hand-Held Mobile Computing Devices, Components Thereof and Cradles Therefore*, United States International Trade Commission, Investigation No. 337-TA-, Brocchini Decl. Exh. 9.) The ITC Complaint and its 47 exhibits – including claims charts and other supporting materials – is over one thousand pages long, and (*See*

---

[3] Intermec has moved to transfer this action to Delaware principally based on its assertion that this case and patent cases between the parties pending in Delaware are related, and therefore judicial efficiencies will somehow be realized by transfer. *See e.g.*, Intermec's Memorandum In Support Of Its Motion To Transfer Venue, dated May 18, 2005 at 1 ("Symbol's choice to attack the same [Intermec] product group in two infringement actions raises many common issues of fact such as how Intermec's accused products function . . .."); at 3 ("judicial economy warrants transfer of this action with the related and earlier filed Delaware Action"). Symbol disagrees, as discussed more fully in its opposing papers. While the Symbol devices accused of infringement in the ITC action (but not the patents) are the same as those accused of infringement in Delaware, obviously Intermec did not allow the "relatedness" and alleged "efficiencies" of filing another case in Delaware to prevent it from filing where it, as claimant, saw fit to file. In fact, though Intermec was arguing to this Court that such allegedly related cases should be heard in one forum, it didn't tell the Court it was planning to bring a "related" case involving the same products in yet a third forum, not in Delaware. In any event, just as Intermec can choose the ITC as its forum, Symbol should not be denied its choice of forum.

9

*id.*) Thus, Intermec has found time to prepare its ITC case and documentation (and likely also has its ITC discovery ready to produce given the short time frame provided for those ITC proceedings, which Intermec will undoubtedly seek to have tried before this action or the pending Delaware action); yet it has not has not been able to gather information for this already-pending action.[4]

## ARGUMENT

### THIS COURT SHOULD COMPEL INTERMEC TO FULLY SATISFY ITS OUTSTANDING DISCOVERY OBLIGATIONS IN A TIMELY MANNER

Symbol served its Document Requests and Interrogatories on May 27, 2005 – well beyond 30 days ago. (*See* Brocchini Decl. Exhs. 1 and 2.) Intermec has also, as discussed above, withdrawn its "objections" to discovery. Thus, Intermec has no basis for refusing to produce documents and answer interrogatories.

Nonetheless, Intermec has not yet produced a single document; nor has it provided any substantive interrogatory answers (and even the few scraps of information Intermec has provided are not given under oath and signed by a representative of Intermec). Rather, Intermec offers its feeble France excuse and simply refuses to provide disclosure other than on a timetable it sets. A party cannot, however, be permitted to

---

[4] Prior to and during the preliminary telephonic pre-trial conference with Magistrate Judge Crocker on June 9, 2005, when the question of a date for amended pleadings was raised, Symbol took the position that that Intermec should be required to amend promptly because it knew Symbol's products and had plenty of time – including during a previously conducted mediation – to evaluate whether those products infringe any Intermec patents. (*See* Joint Preliminary Pretrial Conference Statement, dated June 2, 2005, Brocchini Decl. Exh. 10, at 4 ("Symbol also opposes any request by Intermec to file an amended answer and patent counterclaims on the ground that Intermec has had ample opportunity for pre-filing investigations of any potential patent claims against Symbol in connection with a mediation recently concluded between the parties, and Intermec should have asserted any counterclaims in its answer.").) Intermec argued for a longer period – the August 1 ultimately ordered by the Court – assertedly because it had to decide what patents it might assert. (*See id.* at 4 ("Intermec has not yet filed such a patent counterclaim because it is conducting pre-filing investigation and may be prepared to amend in the future.").) Intermec's detailed 1000-page plus ITC filing makes clear that Intermec knew all along what patents it would assert, what devices it believed infringed those patents and where it would assert those claims.

flout the discovery rules, proffer incredible excuses and thereby dictate when it will be able to provide disclosure; that is particularly so when that party, while unable to make timely disclosure, has "managed" over the last several months to put together a massive ITC filing, while apparently doing little to meet its discovery obligations in this case. Without the Court's intervention, Intermec will continue its strategy of delay, delay and more delay. Accordingly, Symbol respectfully request that the Court require Intermec to immediately produce documents responsive to Symbol's Document Requests and provide substantive answers, signed under oath by Intermec, to each of Symbol's interrogatories.

**MICHAEL BEST & FRIEDRICH LLP**

By: _____
Jeffrey S. Ward
Shane A. Bruner
One South Pinckney Street
Suite 700
Madison, Wisconsin 53703
(608) 257-3501

Attorneys for Plaintiff Symbol Technologies, Inc.

Of Counsel:

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022

Dated: July 6, 2005